CASE NO. _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

*IN RE:* **BAYCARE MEDICAL GROUP, INC. AND
ST. JOSEPH'S HOSPITAL, INC.**

**APPENDIX TO PETITION FOR WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA
No. 8:21-cv-01891**

_____

**Ceci C. Berman**
Florida Bar No. 329060
**Joseph T. Eagleton**
Florida Bar No. 98492
Brannock Berman & Seider
1111 W. Cass St., Ste. 200
Tampa, FL 33606
Tel: (813) 223-4300
Fax: (813) 262-0604
cberman@bbsappeals.com
jeagleton@bbsappeals.com
Secondary: eservice@bbsappeals.com

**Kevin D. Johnson**
Florida Bar No. 0013749
**Ashley T. Gallagher**
Florida Bar No. 125141
Johnson Jackson PLLC
100 N. Tampa St., Ste. 2310
Tampa, FL 33602
Tel: (813) 580-8400
Fax: (813) 580-8407
kjohnson@johnsonjackson.com
agallagher@johnsonjackson.com
Secondary: lesposito@johnsonjackson.com

*Attorneys for Petitioners*

**APPENDIX TO PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA**

| DOCUMENT | DATE | DOC. NO. |
|----------|------|----------|
| Underlying Docket | 8/8/23 | --- |
| Amended Privilege Log | 6/3/22 | 71 |
| Declaration of Gillian E. Small | 6/3/22 | 71-1 |
| Order on Plaintiff's objection to Magistrate's order on Defendant's claim of PSQIA privilege | 4/10/23 | 96 |
| Order on Plaintiff's objection to Magistrate's order on Defendant's claim of PSQIA privilege | 5/26/23 | 103 |
| Defendants' Corrected Motion for Reconsideration of the Court's Order Dated May 26, 2023 (Dkt. No. 103) and Motion to Stay Compliance as to Production of Quality Files | 6/16/23 | 106 |
| Affidavit of Amy Villareal | 6/16/23 | 106-1 |
| Plaintiff's Response in Opposition to Defendants' Corrected Motion for Reconsideration of the Court's Order Dated May 26, 2023 (Dkt. No. 103) and Motion to Stay Compliance as to Production of Quality Files | 6/23/23 | 110 |
| Order denying motion for reconsideration | 6/27/23 | 112 |
| Order to provide referral logs | 6/28/23 | 115 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel of record certifies that the foregoing to filed with the

clerk of court and a copy of the foregoing was furnished via Email this 8th day of

August, 2023, to the following:

**John D. Goldsmith**
**Amy L. Drushal**
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, & Mullins, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Email: jgoldsmith@trenam.com
　　　idawkins@trenam.com
　　　svanboskerck@trenam.com
　　　aldrushal@trenam.com
　　　lbehr@trenam.com

**Terin Barbas Cremer**
Barbas Cremer, PLLC
209 S. Packwood Avenue
Tampa, FL 33606
Email: tcremer@barbascremer.com

|  | */s/Kevin D. Johnson* |
|---|---|
| **Ceci C. Berman** | **Kevin D. Johnson** |
| Florida Bar No. 329060 | Florida Bar No. 0013749 |
| **Joseph T. Eagleton** | **Ashley T. Gallagher** |
| Florida Bar No. 98492 | Florida Bar No. 125141 |
| Brannock Berman & Seider | Johnson Jackson PLLC |
| 1111 W. Cass St., Ste. 200 | 100 N. Tampa St., Ste. 2310 |
| Tampa, FL 33606 | Tampa, FL 33602 |
| Tel: (813) 223-4300 | Tel: (813) 580-8400 |
| Fax: (813) 262-0604 | Fax: (813) 580-8407 |
| cberman@bbsappeals.com | kjohnson@johnsonjackson.com |
| jeagleton@bbsappeals.com | agallagher@johnsonjackson.com |
| Secondary: eservice@bbsappeals.com | Secondary: lesposito@johnsonjackson.com |

*Attorneys for Petitioners*

SL DOC,TRLSET

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:21-cv-01891-WFJ-TGW

Loux v. Baycare Medical Group, Inc. et al

Assigned to: Judge William F. Jung

Referred to: Magistrate Judge Thomas G. Wilson

Demand: $75,000

Cause: 28:451 Employment Discrimination

Date Filed: 08/06/2021

Jury Demand: Plaintiff

Nature of Suit: 442 Civil Rights: Jobs

Jurisdiction: Federal Question

**Plaintiff**

**Tara J. Loux, MD**

represented by **Amy Lea Drushal**
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd
Tampa, FL 33602
813/223-7474
Fax: 813/229-6553
Email: adrushal@trenam.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Terin Barbas Cremer**
209 S. Packwood Ave.
Tampa, FL 33609
813-421-5442
Email: tcremer@barbascremer.com
*ATTORNEY TO BE NOTICED*

**John D. Goldsmith**
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd
Tampa, FL 33602
813-223-7474
Fax: 813/229-6553
Email: jgoldsmith@trenam.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Baycare Medical Group, Inc.**

represented by **Kevin D. Johnson**
Johnson Jackson LLC
100 North Tampa Street, Suite 2310

Tampa, FL 33602
813/580-8400
Fax: 813/580-8407
Email: kjohnson@johnsonjackson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Tinsley Gallagher**
Johnson Jackson LLC
100 North Tampa Street, Suite 2310
Tampa, FL 33602
813-580-8400
Fax: 813-580-8407
Email: agallagher@johnsonjackson.com
*ATTORNEY TO BE NOTICED*

**Ceci Culpepper Berman**
Brannock Berman & Seider
1111 W. Cass Street
Suite 200
Tampa, FL 33606
813-223-4300
Fax: 813-262-0604
Email: cberman@bbsappeals.com
*ATTORNEY TO BE NOTICED*

**Colby Ellis**
333 SE 2nd Avenue
Suite 2700
Miami, FL 33131
229-269-7837
Email: cellis@littler.com
*TERMINATED: 02/06/2023*
*ATTORNEY TO BE NOTICED*

**Joseph T. Eagleton**
Brannock Humphries & Berman
1111 W Cass St Ste 200
Tampa, FL 33606-1308
813-223-4300
Fax: 813-262-0604
Email: jeagleton@bbsappeals.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**St. Joseph's Hospital, Inc.**      represented by  **Kevin D. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Tinsley Gallagher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ceci Culpepper Berman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colby Ellis**
(See above for address)
*TERMINATED: 02/06/2023*
*ATTORNEY TO BE NOTICED*

**Joseph T. Eagleton**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Anand Nayee, MD**           represented by    **Kevin D. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Tinsley Gallagher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ceci Culpepper Berman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colby Ellis**
(See above for address)
*TERMINATED: 02/06/2023*
*ATTORNEY TO BE NOTICED*

**Joseph T. Eagleton**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/06/2021 | 1 | COMPLAINT against All Defendants with Jury Demand (Filing fee $ 402 receipt number AFLMDC-18563568) filed by Tara J Loux, MD. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet, # 5 Proposed Summons Baycare, # 6 Proposed Summons St. Joseph's Hosp., # 7 Proposed Summons Dr. Anand)(Goldsmith, John) (Entered: 08/06/2021) |
| 08/09/2021 | 2 | NEW CASE ASSIGNED to Judge William F. Jung and Magistrate Judge Thomas G. Wilson. New case number: 8:21-cv-1891-WFJ-TGW. (SJB) (Entered: 08/09/2021) |
| 08/09/2021 | 3 | SUMMONS issued as to Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (BES) (Entered: 08/09/2021) |
| 08/09/2021 | 4 | **STANDING ORDER regarding discovery motions. Signed by Magistrate Judge Thomas G. Wilson on 2/1/2021. (DMS)** (Entered: 08/09/2021) |
| 08/13/2021 | 5 | NOTICE of Local Rule 1.07(c), Local Rule 3.02(a)(2), and Local Rule 3.03. |

| | | |
|---|---|---|
| | | **Local Rule 1.07(c)** requires lead counsel to promptly file a **Notice of a Related Action** that identifies and describes any related action pending in the Middle District.<br><br>**-Local Rule 3.02(a)(2)** requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge.<br><br>**-Local Rule 3.03** requires each party to file a disclosure statement with the first appearance that identifies (1) each person that has or might have an interest in the outcome, (2) each entity with publicly traded shares or debt potentially affected by the outcome, (3) each additional entity likely to actively participate, and (4) each person arguably eligible for restitution. The disclosure statement must include this certification - *I certify that, except as disclosed, I am unaware of an actual or potential conflict of interest affecting the district judge or the magistrate judge in this action, and I will immediately notify the judge in writing within fourteen days after I know of a conflict.* (Signed by Deputy Clerk). (SAO) (Entered: 08/13/2021) |
| 08/13/2021 | 6 | NOTICE informing the parties that they may consent to the jurisdiction of a United States magistrate judge by filing Form AO 85 Notice, Consent, and Reference of a Civil Action to a Magistrate Judge using the event **Consent to Jurisdiction of US Magistrate Judge**. (Signed by Deputy Clerk). (SAO) (Entered: 08/13/2021) |
| 08/16/2021 | 7 | PROOF of service by Tara J Loux, MD (Goldsmith, John) (Entered: 08/16/2021) |
| 08/16/2021 | 8 | PROOF of service by Tara J Loux, MD (Goldsmith, John) (Entered: 08/16/2021) |
| 08/16/2021 | 9 | PROOF of service by Tara J Loux, MD (Goldsmith, John) (Entered: 08/16/2021) |
| 08/16/2021 | 10 | RETURN of service executed on 08/11/2021 by Tara J Loux, MD as to Baycare Medical Group, Inc. (BES) (Entered: 08/17/2021) |
| 08/16/2021 | 11 | RETURN of service executed on 08/11/2021 by Tara J Loux, MD as to St. Joseph's Hospital, Inc. (BES) (Entered: 08/17/2021) |
| 08/16/2021 | 12 | RETURN of service executed on 08/12/2021 by Tara J Loux, MD as to Anand Nayee, MD. (BES) (Entered: 08/17/2021) |
| 08/31/2021 | 13 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by All Defendants. (Johnson, Kevin) (Entered: 08/31/2021) |
| 08/31/2021 | 14 | **ENDORSED ORDER granting 13 Motion for Extension of Time to Answer. All Defendants' answer or response due 9/8/2021. Signed by Judge William F. Jung on 8/31/2021. (CCB)** (Entered: 08/31/2021) |
| 09/08/2021 | 15 | MOTION to Dismiss Counts I, IV, V, VI and VII of Plaintiff's Complaint by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Attachments: # 1 Exhibit A - April 16, 2020 Email)(Johnson, Kevin) Modified on 9/9/2021 (ABC). (Entered: 09/08/2021) |
| 09/14/2021 | 16 | NOTICE of certification of Local Rule 3.01(g) by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. re 15 MOTION to Dismiss Counts I, IV, V, VI and VII of Plaintiff's Complaint (Johnson, Kevin) Modified on 9/15/2021 (ABC). (Entered: 09/14/2021) |

USCA11 Case: 23-12571    Document: 1-3    Date Filed: 08/08/2023    Page: 8 of 118

| 09/23/2021 | 17 | Unopposed MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss Counts I, IV, V, VI and VII of Plaintiff's Complaint by Tara J Loux, MD. (Goldsmith, John) (Entered: 09/23/2021) |
|---|---|---|
| 09/23/2021 | 18 | CORPORATE Disclosure Statement by Tara J Loux, MD. (Goldsmith, John) (Entered: 09/23/2021) |
| 09/24/2021 | 19 | CERTIFICATE of interested persons and corporate disclosure statement re 5 Notice to Counsel of Local Rule by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) Modified on 9/27/2021 to removed duplicative punctuation (ABC). (Entered: 09/24/2021) |
| 09/24/2021 | 20 | NOTICE of a related action per Local Rule 1.07(c) by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. Related case(s): Yes (Johnson, Kevin) Modified on 9/27/2021 to remove duplicative punctuation (ABC). (Entered: 09/24/2021) |
| 09/27/2021 | 21 | **ENDORSED ORDER granting 17 Motion for Extension of Time to File Response / Reply. Signed by Judge William F. Jung on 9/27/2021. (Jung, William)** (Entered: 09/27/2021) |
| 09/28/2021 | 22 | NOTICE of Appearance by Amy Lea Drushal on behalf of Tara J Loux, MD (Drushal, Amy) (Entered: 09/28/2021) |
| 09/30/2021 | 23 | NOTICE of Appearance by Terin Barbas Cremer on behalf of Tara J Loux, MD. (Cremer, Terin) (Entered: 09/30/2021) |
| 10/05/2021 | 24 | CASE MANAGEMENT REPORT. (Drushal, Amy) (Entered: 10/05/2021) |
| 10/06/2021 | 25 | **CASE MANAGEMENT AND SCHEDULING ORDER: Dispositive motions due by 7/29/2022. Pretrial statement due by 12/1/2022. Final Pretrial Conference set for 12/8/2022 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Jury Trial set for the January 2023 Trial Term commencing 1/3/2023 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Signed by Judge William F. Jung on 10/6/2021. (CAH)** (Entered: 10/06/2021) |
| 10/07/2021 | 26 | AMENDED COMPLAINT *and Demand for Jury Trial* against Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. with Jury Demand filed by Tara J Loux, MD. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Goldsmith, John) Modified on 10/8/2021 (ABC). (Entered: 10/07/2021) |
| 10/12/2021 | 27 | **ENDORSED ORDER finding as moot in light of the amended complaint 15 Motion to Dismiss. Signed by Judge William F. Jung on 10/12/2021. (Jung, William)** Modified on 10/13/2021 (ABC). (Entered: 10/12/2021) |
| 10/21/2021 | 28 | MOTION to Dismiss Counts III, IV, VI, VII, VIII and IX of Plaintiff's Amended Complaint by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Attachments: # 1 Exhibit A - April 16, 2020 Email between Loux and Nayee) (Johnson, Kevin) Modified text on 10/22/2021 (ABC). (Entered: 10/21/2021) |
| 11/01/2021 | 29 | Unopposed MOTION for Extension of Time to File Response/Reply by Tara J. Loux, MD. (Drushal, Amy) (Entered: 11/01/2021) |
| 11/01/2021 | 30 | **ENDORSED ORDER granting 29 Motion for Extension of Time to File Response to 28 MOTION to Dismiss Counts III, IV, VI, VII, VIII and IX of Plaintiff's Amended Complaint. Response due by 11/19/2021. Signed by Judge William F. Jung on 11/1/2021. (CCB)** (Entered: 11/01/2021) |
| 11/02/2021 | 31 | NOTICE of hearing (in person) on all pending motions including 28 MOTION to Dismiss Counts III, IV, VI, VII, VIII and IX of Plaintiff's Amended Complaint. Motion |

| | | Hearing set for 12/1/2021 at 9:30 AM in Tampa Courtroom 13 B before Judge William F. Jung. (CCB) (Entered: 11/02/2021) |
|---|---|---|
| 11/19/2021 | 32 | MEMORANDUM in opposition re 28 Motion to Dismiss *Counts III, IV, VI, VIII, and X of Plaintiff's Amended Complaint* filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 11/19/2021) |
| 12/01/2021 | 33 | Minute Entry. In Person Proceedings held before Judge William F. Jung: MOTION HEARING held on 12/1/2021 re 28 MOTION to Dismiss Counts III, IV, VI, VII, VIII and IX of Plaintiff's Amended Complaint filed by Anand Nayee, MD, St. Joseph's Hospital, Inc., Baycare Medical Group, Inc.. Court Reporter: Tracey Aurelio (CAH) (Entered: 12/01/2021) |
| 12/07/2021 | 34 | **ORDER denying 28 Motion to Dismiss. Signed by Judge William F. Jung on 12/7/2021. (JKM)** (Entered: 12/07/2021) |
| 12/21/2021 | 35 | ANSWER and affirmative defenses to 26 Amended Complaint by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 12/21/2021) |
| 12/22/2021 | 36 | *Amended* ANSWER and affirmative defenses to Complaint by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 12/22/2021) |
| 02/16/2022 | 37 | MOTION for Miscellaneous Relief, specifically for Rule 16 Pretrial Conference by Tara J. Loux, MD. (Drushal, Amy) (Entered: 02/16/2022) |
| 02/18/2022 | 38 | RESPONSE in Opposition re 37 MOTION for Miscellaneous Relief, specifically for Rule 16 Pretrial Conference filed by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Attachments: # 1 Exhibit Email Chain 02.04.22, # 2 Exhibit Email Chain 02.15.22)(Johnson, Kevin) (Entered: 02/18/2022) |
| 02/25/2022 | 39 | MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents by Tara J. Loux, MD. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Goldsmith, John) (Entered: 02/25/2022) |
| 02/25/2022 | 40 | MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents by Tara J. Loux, MD. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Goldsmith, John) (Entered: 02/25/2022) |
| 02/28/2022 | 41 | Unopposed MOTION for Extension of Time to Complete Discovery *; Extend Plaintiff's Expert Disclosure Deadline* by Tara J. Loux, MD. (Drushal, Amy) (Entered: 02/28/2022) |
| 03/10/2022 | 42 | Unopposed MOTION for Extension of Time to File Response/Reply as to 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents , 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 03/10/2022) |
| 03/10/2022 | 43 | **ENDORSED ORDER granting 42 Motion for Extension of Time to File Response re 39 MOTION to Compel Baycare Medical Group, Inc. to Produce, 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce. Responses due by 3/18/2022. Signed by Judge William F. Jung on 3/10/2022. (CCB)** (Entered: 03/10/2022) |
| 03/14/2022 | 44 | **ENDORSED ORDER granting 41 Motion to extend expert disclosures. Signed by Judge William F. Jung on 3/14/2022. (CCB)** (Entered: 03/14/2022) |
| 03/17/2022 | 45 | Unopposed MOTION for Extension of Time to File Response as to 40 MOTION to Compel , 39 MOTION to Compel by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) Modified on 3/17/2022 (BES). (Entered: 03/17/2022) |

| 03/17/2022 | 46 | **ORDER granting 45 Motion for Extension of Time to File Response / Reply re 45 Unopposed MOTION for Extension of Time to File Response as to 40 MOTION to Compel , 39 MOTION to Compel. Responses due by 3/23/2022. Signed by Magistrate Judge Thomas G. Wilson on 3/17/2022. (ABC)** (Entered: 03/18/2022) |
|---|---|---|
| 03/23/2022 | 47 | RESPONSE in Opposition re 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents filed by Baycare Medical Group, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit Hagland Decl.)(Johnson, Kevin) (Entered: 03/23/2022) |
| 03/23/2022 | 48 | RESPONSE in Opposition re 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents filed by St. Joseph's Hospital, Inc. (Attachments: # 1 Exhibit 1)(Johnson, Kevin) (Entered: 03/23/2022) |
| 03/24/2022 | 49 | NOTICE of Corrected Filings by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. re 47 Response in Opposition to Motion, 48 Response in Opposition to Motion (Johnson, Kevin) (Entered: 03/24/2022) |
| 03/24/2022 | 50 | RESPONSE in Opposition re 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents *Corrected Response w/ Exhibits* filed by Baycare Medical Group, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit Messenger Decl., # 3 Exhibit Hagland Decl.)(Johnson, Kevin) Modified on 3/24/2022 (BES). (Entered: 03/24/2022) |
| 03/24/2022 | 51 | RESPONSE in Opposition re 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents *Corrected Response w/ Declaration* filed by St. Joseph's Hospital, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit Messenger Decl.)(Johnson, Kevin) Modified on 3/24/2022 (BES). (Entered: 03/24/2022) |
| 03/25/2022 | 52 | NOTICE Requesting Oral Argument by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. re 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents , 51 Response in Opposition to Motion, 50 Response in Opposition to Motion, 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents (Johnson, Kevin) Modified on 3/25/2022 (BES). (Entered: 03/25/2022) |
| 03/28/2022 | 53 | **ORDER Setting Hearing on Motion 37 MOTION for Miscellaneous Relief, specifically for Rule 16 Pretrial Conference , 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents , 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents : Motion Hearing set for 4/21/2022 at 2:30 PM in Tampa Courtroom 12A before Magistrate Judge Thomas G. Wilson. Signed by Magistrate Judge Thomas G. Wilson on 3/28/2022. (ABC)** (Entered: 03/29/2022) |
| 03/29/2022 | 54 | NOTICE of in-person hearing on Motion for Miscellaneous Relief, specifically for Rule 16 Pretrial Conference (Doc. 37), Motion to Compel Baycare Medical Group, Inc. to Produce Responsive Documents (Doc. 39), and Motion to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents (Doc. 40). Motion Hearing set for 4/21/2022 at 02:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. Belated submissions are disfavored. Any materials submitted after 4:00 p.m. on the day before the hearing will be disregarded.(KAJ) (Entered: 03/29/2022) |
| 03/30/2022 | 55 | REPLY/MEMORANDUM in support re 40 Motion to Compel filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 03/30/2022) |
| 04/04/2022 | 56 | MOTION for Miscellaneous Relief, specifically For Leave to File a Sur-Reply to Plaintiff Tara J. Loux, M.D.'s Motions to Compel by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 04/04/2022) |

| 04/05/2022 | 57 | RESPONSE in Opposition re 56 MOTION for Miscellaneous Relief, specifically For Leave to File a Sur-Reply to Plaintiff Tara J. Loux, M.D.'s Motions to Compel filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 04/05/2022) |
|---|---|---|
| 04/05/2022 | 58 | NOTICE of withdrawal of motion by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. re 56 MOTION for Miscellaneous Relief, specifically For Leave to File a Sur-Reply to Plaintiff Tara J. Loux, M.D.'s Motions to Compel filed by St. Joseph's Hospital, Inc., Baycare Medical Group, Inc. (Johnson, Kevin) (Entered: 04/05/2022) |
| 04/05/2022 | 59 | Amended MOTION for Miscellaneous Relief, specifically For Leave to File a Sur-Reply to Plaintiff Tara J. Loux, M.D.'s Motions to Compel by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 04/05/2022) |
| 04/05/2022 | 60 | RESPONSE in Opposition re 59 Amended MOTION for Miscellaneous Relief, specifically For Leave to File a Sur-Reply to Plaintiff Tara J. Loux, M.D.'s Motions to Compel filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 04/05/2022) |
| 04/05/2022 | 61 | **ORDER denying as moot 56 Motion ; granting 59 Amended Motion to the extent that the defendants may file a sur-reply no longer than five pages in length. Signed by Magistrate Judge Thomas G. Wilson on 4/5/2022. (ABC)** (Entered: 04/06/2022) |
| 04/12/2022 | 62 | MEMORANDUM in opposition re 40 Motion to Compel, 39 Motion to Compel *Sur-Reply in Opposition* filed by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Attachments: # 1 Affidavit Small Decl.)(Johnson, Kevin) (Entered: 04/12/2022) |
| 04/20/2022 | 63 | NOTICE by Tara J. Loux, MD re 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents , 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents (Attachments: # 1 Exhibit 1)(Goldsmith, John) (Entered: 04/20/2022) |
| 04/21/2022 | 64 | Minute Entry. In Person Proceedings held before Magistrate Judge Thomas G. Wilson: MOTION HEARING held on 4/21/2022 re 40 MOTION to Compel St. Joseph's Hospital, Inc. to Produce Responsive Documents filed by Tara J. Loux, MD, 37 MOTION for Miscellaneous Relief, specifically for Rule 16 Pretrial Conference filed by Tara J. Loux, MD, 39 MOTION to Compel Baycare Medical Group, Inc. to Produce Responsive Documents filed by Tara J. Loux, MD. (DIGITAL) (ABC) (Entered: 04/22/2022) |
| 05/05/2022 | 66 | **ORDER denying 39 Motion to Compel ; granting in part and denying in part 40 Motion to Compel. Signed by Magistrate Judge Thomas G. Wilson on 5/5/2022. (ABC)** (Entered: 05/06/2022) |
| 05/10/2022 | 67 | Unopposed MOTION to Stay re 25 Case Management and Scheduling Order by Tara J. Loux, MD. (Drushal, Amy) (Entered: 05/10/2022) |
| 05/10/2022 | 68 | **ENDORSED ORDER granting 67 Motion to Stay the following Case Management and Scheduling Deadlines: expert disclosure; mediation, discovery cut-off, and dispositive motion filing deadline. Seven (7) days after the motion to compel is resolved, the parties are directed to file a motion providing new deadlines. Signed by Judge William F. Jung on 5/10/2022. (CCB)** (Entered: 05/10/2022) |
| 05/25/2022 | 69 | Unopposed MOTION for Extension of Time to File Amended Privilege Log by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 05/25/2022) |
| 05/26/2022 | 70 | **ORDER granting 69 Motion for Extension of Time to File. Signed by Magistrate Judge Thomas G. Wilson on 5/26/2022. (ABC)** (Entered: 05/27/2022) |
| 06/03/2022 | 71 | NOTICE of Amended Privilege Log by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. re 66 Order on Motion to Compel. (Attachments: # 1 Exhibit A |

| 06/22/2022 | 72 | Unopposed MOTION for Extension of Time to File Objection to Defendants' Amended Privilege Log by Tara J. Loux, MD. (Drushal, Amy) (Entered: 06/22/2022) |
|---|---|---|
| 06/23/2022 | 73 | **ORDER granting 72 Motion for Extension of Time to File. Plaintiff must file her objection by July 6, 2022. Signed by Magistrate Judge Thomas G. Wilson on 6/23/2022. (AMS)** (Entered: 06/24/2022) |
| 07/06/2022 | 74 | OBJECTION re 71 Notice (Other) . (Attachments: # 1 Exhibit A)(Drushal, Amy) (Entered: 07/06/2022) |
| 07/07/2022 | 75 | **ORDER denying as moot 37 Motion for Rule 16 Pretrial Conference. Signed by Magistrate Judge Thomas G. Wilson on 7/7/2022. (ABC)** (Entered: 07/07/2022) |
| 07/19/2022 | 76 | MOTION for Miscellaneous Relief, specifically Leave to File Reply by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 07/19/2022) |
| 07/21/2022 | 77 | NOTICE of Filing Supplemental Certification under Rule 3.01(g) by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. re 76 MOTION for Leave to File Reply (Johnson, Kevin) Modified on 7/22/2022 (BES). (Entered: 07/21/2022) |
| 08/11/2022 | 78 | **ORDER granting 76 Motion for Leave to File a Reply to the extent that the defendants may file a reply no longer than (7) seven pages in length within (10) ten days from the date of this Order. Signed by Magistrate Judge Thomas G. Wilson on 8/11/2022. (ABC)** (Entered: 08/12/2022) |
| 08/22/2022 | 79 | RESPONSE re 74 Objection filed by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 08/22/2022) |
| 12/06/2022 | 80 | NOTICE OF RESCHEDULING HEARING: The final pretrial conference previously scheduled for 12/8/2022 and jury trial previously scheduled for the term starting 1/3/2023 are rescheduled. New scheduling date and time: Final Pretrial Conference set for 2/9/2023 at 9:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. The joint pretrial statement is due 2/2/2023. Jury Trial set for 3/6/2023 at 9:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. (CCB) (Entered: 12/06/2022) |
| 01/23/2023 | 81 | MOTION for Miscellaneous Relief, specifically Rule 16 Pretrial Conference by Tara J. Loux, MD. (Goldsmith, John) (Entered: 01/23/2023) |
| 01/26/2023 | 82 | **ORDER denying re 74 Plaintiff's Objection to Amended Privilege Log. Signed by Magistrate Judge Thomas G. Wilson on 1/26/2023. (ABC)** (Entered: 01/26/2023) |
| 02/02/2023 | 83 | NOTICE of Appearance by Ashley Tinsley Gallagher on behalf of Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Gallagher, Ashley) (Entered: 02/02/2023) |
| 02/02/2023 | 84 | Joint MOTION for Extension of Time to File Proposed Case Management and Scheduling Order by Tara J. Loux, MD. (Drushal, Amy) (Entered: 02/02/2023) |
| 02/02/2023 | 85 | **ENDORSED ORDER granting 84 Motion for Extension of Time to File proposed amended case management and scheduling order on or before 2/24/2023. Signed by Judge William F. Jung on 2/2/2023. (CCB)** (Entered: 02/02/2023) |
| 02/02/2023 | 86 | **ENDORSED ORDER granting 81 Motion for a preliminary pretrial conference. Notice setting a telephonic hearing will be entered separately. Signed by Judge William F. Jung on 2/2/2023. (CCB)** (Entered: 02/02/2023) |
| 02/02/2023 | 87 | NOTICE of Telephonic Hearing: Preliminary Pretrial Conference set for 2/9/2023 at 8:30 AM before Judge William F. Jung. (The final pretrial conference previously scheduled to |

| | | |
|---|---|---|
| | | begin at 9:00 a.m. will be reset at a later time.) Counsel are directed to call the reserved conference toll free number at 1-888-557-8511. Enter the access code: 4744914 followed by the # (pound) key. You will be prompted to enter the security code: 1891 followed by the # (pound) key. Please call in at least 10 minutes before the scheduled hearing.(CCB) (Entered: 02/02/2023) |
| 02/03/2023 | 88 | Unopposed MOTION for Colby J. Ellis to Withdraw as Attorney by All Defendants. (Ellis, Colby) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 02/03/2023) |
| 02/06/2023 | 89 | **ENDORSED ORDER granting 88 Motion to Withdraw as Attorney. Attorney Colby Ellis terminated. Signed by Judge William F. Jung on 2/6/2023. (CCB)** (Entered: 02/06/2023) |
| 02/09/2023 | 90 | NOTICE of hearing (in person): Miscellaneous Hearing set for 2/28/2023 at 1:00 PM in Tampa Courtroom 15 B before Judge William F. Jung. (CCB) (Entered: 02/09/2023) |
| 02/09/2023 | 91 | Minute Entry. Telephonic Proceedings held before Judge William F. Jung: PRELIMINARY PRETRIAL CONFERENCE held on 2/9/2023. Court Reporter: Bill Jones (CAH) (Entered: 02/09/2023) |
| 02/09/2023 | 92 | NOTICE canceling jury trial scheduled for 3/6/2023. The trial will be rescheduled at a later date. (CCB) (Entered: 02/09/2023) |
| 02/09/2023 | 93 | OBJECTION re 82 Order *on Defendants' Claim of PSQIA Privilege*. (Goldsmith, John) (Entered: 02/09/2023) |
| 02/23/2023 | 94 | MEMORANDUM in opposition re 93 Objection *to Order Denying Motion to Compel* filed by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) Modified text on 2/24/2023 (SET). (Entered: 02/23/2023) |
| 02/28/2023 | 95 | Minute Entry. In Person Proceedings held before Judge William F. Jung: MISCELLANEOUS HEARING held on 2/28/2023. Court Reporter: Tracey Aurelio (CAH) (Entered: 02/28/2023) |
| 04/10/2023 | 96 | **ORDER on 93 Plaintiff's Objection and 94 the Memorandum in opposition filed by Anand Nayee, MD, St. Joseph's Hospital, Inc., and Baycare Medical Group, Inc. regarding the Magistrate Judge's 82 Order. Signed by Judge William F. Jung on 4/10/2023. (CCB)** (Entered: 04/10/2023) |
| 04/28/2023 | 97 | NOTICE of compliance re 96 Order, *with the Court's Order entered on April 10, 2023* by Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 04/28/2023) |
| 05/02/2023 | 98 | **ENDORSED ORDER: Concerning discovery, Defendants will please serve this week by Thursday (but do not file) the paper documents provided to chambers this past Friday for the in camera submission. This is the: Small Declaration; Villareal affidavit; Hodavance declaration; and the notice of submission of documents. The other item provided in Friday's in camera submission was the thumb drive containing the "205 quality files." Next week at the telephonic hearing we can discuss how these affidavits bear on discovery, and whether the thumb drive (which does appear to be "peer review incidents" of potential comparators) should be produced. Signed by Judge William F. Jung on 5/2/2023. (Jung, William)** (Entered: 05/02/2023) |
| 05/02/2023 | 99 | NOTICE of Telephonic Hearing concerning the 82 Order on Defendants' Claim of PSQIA Privilege, 93 Plaintiff's Objection, 94 Defendants' response, and the documents produced for the Court's in camera and ex parte review. Telephone Conference/Hearing set for 5/8/2023 at 01:30 PM before Judge William F. Jung. Counsel are directed to call the |

| | | reserved conference toll free number at 1-888-557-8511. Enter the access code: 4744914 followed by the # (pound) key. You will be prompted to enter the security code: 1891 followed by the # (pound) key. Please call in at least 10 minutes before the scheduled hearing. (CCB) (Entered: 05/02/2023) |
|---|---|---|
| 05/08/2023 | [100](#) | Minute Entry. Telephonic Proceedings held before Judge William F. Jung: TELEPHONE CONFERENCE re: 99 held on 5/8/2023. Court Reporter: Susan Cayler (KAC) (Entered: 05/08/2023) |
| 05/17/2023 | [101](#) | TRANSCRIPT of TELEPHONE CONFERENCE held on 5.8.23 before Judge William F. Jung. Court Reporter/Transcriber: Susie Cayler. Email address: reportercayler@gmail.com. Telephone number: 5157785008.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/7/2023. Redacted Transcript Deadline set for 6/20/2023. Release of Transcript Restriction set for 8/15/2023. (Cayler, Susan) Modified text on 5/19/2023 (LNR). (Entered: 05/17/2023) |
| 05/26/2023 | 102 | Court's query: Counsel we were expecting a very short draft order from the last hearing, thanks. Signed by Judge William F. Jung on 5/26/2023. (Jung, William) (Entered: 05/26/2023) |
| 05/26/2023 | [103](#) | **ORDER on [93](#) Plaintiff's Objection and Defendants' [94](#) Opposition to Objection regarding [82](#) Order after hearing held 5/8/2023. Parties shall comply with the directives in the attached order reflecting 6/16/2023 due dates. Signed by Judge William F. Jung on 5/26/2023. (CCB)** (Entered: 05/26/2023) |
| 06/16/2023 | [104](#) | **HIPAA ORDER Signed by Judge William F. Jung on 6/16/2023. (Attachments: # [1](#) Exhibit A)(Jung, William)** (Entered: 06/16/2023) |
| 06/16/2023 | [105](#) | MOTION for Reconsideration re [103](#) Order, *of the Court's Order dated May 26, 2023, and Motion to Stay Compliance as to Production of Quality Files* by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) Modified text on 6/16/2023 (AG). (Entered: 06/16/2023) |
| 06/16/2023 | [106](#) | Amended MOTION for Reconsideration re [103](#) Order, *of the Court's Order dated May 26, 2023, and Motion to Stay Compliance as to Production of Quality Files* by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Attachments: # [1](#) Exhibit Affidavit of Amy Villareal)(Johnson, Kevin). Added MOTION to Stay on 6/16/2023 (AG). (Entered: 06/16/2023) |
| 06/16/2023 | 107 | **ENDORSED ORDER denying as moot [105](#) Motion for Reconsideration. See Corrected motion filed at [106](#). Signed by Judge William F. Jung on 6/16/2023. (CCB)** (Entered: 06/16/2023) |
| 06/16/2023 | [108](#) | NOTICE of compliance re [103](#) Order, *entered on May 26, 2023* by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 06/16/2023) |
| 06/16/2023 | 109 | **ENDORSED ORDER directing Tara J. Loux, MD to respond to [106](#) Amended MOTION for Reconsideration and Motion to Stay Compliance as to Production of Quality Files. Response due within seven (7) days. Signed by Judge William F. Jung on 6/16/2023. (CCB)** (Entered: 06/16/2023) |

| | | |
|---|---|---|
| 06/23/2023 | 110 | RESPONSE in Opposition re 106 Amended MOTION for Reconsideration re 103 Order, *of the Court's Order dated May 26, 2023, and Motion to Stay Compliance as to Production of Quality Files* MOTION to Stay filed by Tara J. Loux, MD. (Drushal, Amy) (Entered: 06/23/2023) |
| 06/23/2023 | 111 | **ENDORSED ORDER: The Court is reviewing the materials that defendants delivered on June 16, 2023 for in camera, ex parte review. Concerning the referral logs described in category 6 of the amended privilege log, the Court has this question: The Court understands this volume of paper, before reduction down to the ten selected potential comparators, was "94 sheets - 235 pages". That is what was discussed at the hearing. The June 16 in camera production on this item appears to be 6 pages, not bates stamped, with about 50 lines of text. Does the Court have that correct? It appears to resemble an index. Is this the entirety of the referral logs that apply to the ten possible comparators? Please provide an answer on this docket by close of business June 27, 2023. Signed by Judge William F. Jung on 6/23/2023. (Jung, William) (Entered: 06/23/2023)** |
| 06/27/2023 | 112 | **ORDER denying 106 Motion for Reconsideration of 103 the Court's Order dated May 26, 2023, and denying 106 Motion to Stay Compliance as to Production of Quality Files. Signed by Judge William F. Jung on 6/27/2023. (CCB)** (Entered: 06/27/2023) |
| 06/27/2023 | 114 | NOTICE of compliance re 111 Order, *Court's Endorsed Order Dated June 23, 2023* by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) (Entered: 06/27/2023) |
| 06/28/2023 | 115 | **ENDORSED ORDER: Under the appropriate HIPAA protocols, Defendants should provide to Plaintiff the "category 6 referral logs" provided to the Court, which number six pages, the top page of which has the date 2/22/19 in the first line. Also provide the four-page Report Number 402173/Incident Number 16362. The Court understands this four-page report to be the Code 15 report identified in the Small Declaration of April 28, 2023. Signed by Judge William F. Jung on 6/28/2023. (Jung, William)** (Entered: 06/28/2023) |
| 06/28/2023 | 117 | NOTICE of Telephonic Hearing: Status Conference set for 8/2/2023 at 9:30 AM before Judge William F. Jung. The purpose of the status is to set a trial date. Counsel are directed to call the reserved conference toll free number at 1-888-557-8511. Enter the access code: 4744914 followed by the # (pound) key. You will be prompted to enter the security code: 1891 followed by the # (pound) key. Please call in at least 10 minutes before the scheduled hearing.(CCB) (Entered: 06/28/2023) |
| 06/30/2023 | 118 | MOTION for Miscellaneous Relief, specifically to Amend Orders (Dkt. Nos. 103, 112, 115) to Certify for Interlocutory Appeal and Motion to Stay Pending Appeal by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc. (Johnson, Kevin) Modified on 7/3/2023 to edit docket text (KNC). (Entered: 06/30/2023) |
| 07/14/2023 | 119 | RESPONSE in Opposition re 118 MOTION for Miscellaneous Relief, specifically to Amend Orders (Dkt. Nos. 103, 112, 115) to Certify for Interlocutory Appeal and Motion to Stay Pending Appeal filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 07/14/2023) |
| 07/17/2023 | 120 | **ENDORSED ORDER denying 118 Motion for certification under 28 U.S.C. 1292(b). Signed by Judge William F. Jung on 7/17/2023. (Jung, William)** (Entered: 07/17/2023) |
| 07/28/2023 | 121 | NOTICE canceling status conference scheduled for 8/2/2023. (CCB) (Entered: 07/28/2023) |

| 07/28/2023 | 122 | **ENDORSED ORDER directing the parties to confer and file a joint case management report (or two unilateral reports if contested) for the remainder of the case. The case management report is due August 4, 2023. The Court will enter a Case Management and Scheduling Order thereafter. The hearing set for 8/2/2023 has been canceled by separate notice. Signed by Judge William F. Jung on 7/28/2023. (CCB)** (Entered: 07/28/2023) |
|---|---|---|
| 08/02/2023 | 123 | MOTION to Stay *Orders Compelling Production of Privileged Documents* by Baycare Medical Group, Inc., St. Joseph's Hospital, Inc.(Johnson, Kevin) Modified text on 8/2/2023 (MCB). (Entered: 08/02/2023) |
| 08/02/2023 | 124 | NOTICE of Appearance by Ceci Culpepper Berman on behalf of Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Berman, Ceci) (Entered: 08/02/2023) |
| 08/02/2023 | 125 | NOTICE of Appearance by Joseph T. Eagleton on behalf of Baycare Medical Group, Inc., Anand Nayee, MD, St. Joseph's Hospital, Inc. (Eagleton, Joseph) (Entered: 08/02/2023) |
| 08/02/2023 | 126 | MOTION for Miscellaneous Relief, specifically enforce court orders *dated May 26, 2023 and June 28, 2023* by Tara J. Loux, MD. (Drushal, Amy) (Entered: 08/02/2023) |
| 08/02/2023 | 127 | RESPONSE in Opposition re 123 MOTION to Stay *Orders Compelling Production of Privileged Documents* filed by Tara J. Loux, MD. (Goldsmith, John) (Entered: 08/02/2023) |
| 08/02/2023 | 128 | **ENDORSED ORDER granting in part and denying in part 123 Motion to Stay. The movant seeks time to file a petition for mandamus on this discovery dispute. The matter has been heavily litigated and the Court will not repeat matters here other than to note that the motion pays very short shrift to the ability of protective orders and confidentiality orders to ensure protection of the records appropriately among litigants here only. In any event, to permit movant some reasonable time to pursue the mandamus path, the Court will not require production of these contested materials for 45 days from today (assuming immediate pursuit by movant of its desired strategy) at which time this delay or stay will expire of its own accord. This applies only to the contested discovery materials. Signed by Judge William F. Jung on 8/2/2023. (Jung, William)** (Entered: 08/02/2023) |
| 08/02/2023 | 129 | **ENDORSED ORDER taking under advisement 126 Motion enforcement of prior discovery orders. The Court will take under advisement this motion until 45 days from today. Signed by Judge William F. Jung on 8/2/2023. (Jung, William)** (Entered: 08/02/2023) |
| 08/04/2023 | 130 | UNILATERAL CASE MANAGEMENT REPORT. (Drushal, Amy) (Entered: 08/04/2023) |
| 08/04/2023 | 131 | UNILATERAL CASE MANAGEMENT REPORT. (Johnson, Kevin) (Entered: 08/04/2023) |
| 08/07/2023 | 132 | **AMENDED CASE MANAGEMENT AND SCHEDULING ORDER: Discovery is due by 5/29/2024. Dispositive motions are due by 6/25/2024. Pretrial statement due by 10/6/2024. Final Pretrial Conference is set for 11/1/2024 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Jury Trial is set for the December 2024 Trial Term commencing 12/2/2024 at 09:00 AM in Tampa Courtroom 15 B before Judge William F. Jung. Lead counsel to coordinate dates. Signed by Judge William F. Jung on 8/7/2023. (JCG)** (Entered: 08/07/2023) |

## PACER Service Center

### Transaction Receipt

08/08/2023 11:05:08

| PACER Login: | bbsappeals | Client Code: | BayCare |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 8:21-cv-01891-WFJ-TGW |
| Billable Pages: | 12 | Cost: | 1.20 |

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TARA J. LOUX, M.D.,**

     **Plaintiff,**

**v.**                         **CASE NO.: 8:21-cv-01891-WFJ-TGW**

**BAYCARE MEDICAL GROUP, INC.,
ST. JOSEPH'S HOSPITAL, INC., and
ANAND NAYEE, M.D.,**

     **Defendants.**

_____/

**<u>AMENDED PRIVILEGE LOG</u>**

Defendants, BayCare Medical Group, Inc., St. Joseph's Hospital, Inc., and Anand Nayee, M.D. (collectively "Defendants"), hereby state that they have withheld the following documents/information from their responses to Plaintiff's Request for Production of Documents as privileged under the attorney-client privilege, protected by work-product protection pursuant to <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), or protected by patient safety work product privilege pursuant to 42 U.S.C. 299 et. seq. ("Patient Safety and Quality Improvement Act of 2005") and pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure.

This privilege log is further supported by the declaration of Gill Small, attached as Exhibit A.

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 1 | Correspondence (outgoing) | Correspondence from Plaintiff's counsel; Defendants' investigation of Plaintiff's allegations; evaluation of and response to Plaintiff's claims; and related matters. | Johnson Jackson PLLC attorneys Kevin D. Johnson, Erin G. Jackson, and Colby J. Ellis (or staff acting under their supervision including but not limited to Julia Shinn, Laura Kick, Tiffany Albertson, | Defendants and their employees and agents | Communication about various claim-related topics including defense strategy, information needed to understand claims and evaluate defenses, information needed to respond to the FCHR's investigation, information needed to | N/A | From April 29, 2020 - present | A/C, W/P |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
|  |  |  | and Karen Harris). |  | prepare for the Fair Hearing, facts needed to uphold claims of privilege, information needed to respond to discovery and make disclosures, and other matters or information needed by defense counsel to defend this matter. |  |  |  |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 2 | Correspondence (incoming) | Correspondence from Plaintiff's counsel; Defendants' investigation of Plaintiff's allegations; evaluation of and response to Plaintiff's claims; and related matters. | Defendants and their employees and agents | Johnson Jackson PLLC attorneys Kevin D. Johnson, Erin G. Jackson, and Colby J. Ellis (or staff acting under their supervision including but not limited to Julia Shinn, Laura Kick, Tiffany | Communication about various claim-related topics including defense strategy, information needed to understand claims and evaluate defenses, facts needed to respond to the FCHR's investigation, information | N/A | From April 29, 2020 - present | A/C, W/P |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 22 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | Albertson, and Karen Harris). | needed to prepare for the Fair Hearing, facts needed to uphold claims of privilege, information needed to respond to discovery and make disclosures, and other matters or information needed by defense counsel to | | | |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | defend this matter. | | | |
| 3 | Notes | Corresponde nce from Plaintiff's counsel; Defendants' investigation of Plaintiff's allegations; evaluation of and response to Plaintiff's claims; and related matters. | Johnson Jackson PLLC attorneys Kevin D. Johnson, Erin G. Jackson, and Colby J. Ellis (or staff acting under their supervision including | Matter File | Record mental impressions of counsel; prepare strategy for Fair Hearing; identify information needed and tasks necessary to defend Defendants | N/A | From April 29, 2020 - present | A/C, W/P |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | but not limited to Julia Shinn, Laura Kick, Tiffany Albertson, and Karen Harris). | | in litigation and the FCHR's investigation of charges of discrimination; prepare to defend witnesses in depositions; prepare strategy for discovery, motions, and potential trial | | | |

USCA11 Case: 23-12571    Document: 1-3    Date Filed: 08/08/2023    Page: 25 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 4 | Contents of matter files in Defense counsel's case management system regarding Plaintiff's claims including but not limited to: <br>• Research <br>• Analysis of claims; <br>• Drafts of motions and pleadings; <br>• Documents and information | Corresponde nce from Plaintiff's counsel; Plaintiff's request for a Fair Hearing; Plaintiff's lawsuit; Defendants' investigation of Plaintiff's allegations; Defendants' preparation and investigation for the Fair Hearing; evaluation of and response | Johnson Jackson PLLC attorneys Kevin D. Johnson, Erin G. Jackson, and Colby J. Ellis (or staff acting under their supervision including but not limited to Julia Shinn, Laura Kick, Tiffany Albertson, | Matter files | Record mental impressions of counsel; enable preparations for Fair Hearing and the defense of Defendants in litigation and the FCHR's investigation; allow for review and revision of pleadings, filings, and corresponden ce; organize client | N/A | From April 29, 2020 - present | A/C, W/P |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | provided by clients; • Billing records | to Plaintiff's claims; and related matters. | and Karen Harris). | | information in manner that enables attorneys to understand client's operations while tracking and assessing subjects on which more information is needed; communication to client regarding work done and basis for invoices. | | | |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 5 | Quality files located in the rL Datix module used by the St. Joseph's quality department ("quality files") | Issues brought to the attention of St. Joseph's quality department for review and analysis as to whether quality-of-care issues exist with respect to care provided by specific providers. | St. Joseph's quality department team members. | Quality files are created within rL Datix's "peer review" module used by St. Joseph's quality department and remain in that module. | Quality files are specific types of records created within rL Datix when a referred quality-of-care concern requires further review of the care of a specific provider. Quality files include information such as the facility | There are 205 quality files in the rL Datix module used by St. Joseph's quality department that relate to the 16 doctors (not including Dr. Loux) identified in Request for Production No. 6. | Various dates within the period specified in Plaintiff's discovery requests. | PSQIA ●Quality files contain patient safety information gathered as part of BayCare's PSES for the improvement of patient safety and the quality of health care delivery; ●Quality files also record the deliberation |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 29 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | name, file ID, the provider's name, MRN, encounter number, case summary, quality concerns, adverse patient outcome, care rating (if applicable), behavior rating (if applicable), documentati on issues (if applicable), | | | s and analysis of team members acting within BayCare's PSES to assess whether particular issues show a potential to impact patient safety or quality of care; • Quality files are not created to |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | care issues (if applicable), details, other issues, contributing factors and recommendations. The quality file is recorded, reviewed, and analyzed by team members within the quality department and other reviewers | | | meet any external obligations. |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | designated by the quality department to determine whether the care provided by the relevant provider raised issues of patient safety or quality of care. | | | |

14

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 31 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 6 | Referral Logs (Excel Form) | The referral logs contain each quality-of-care concern that is referred to the quality department of St. Joseph's Hospital. | Quality Coordinators at St. Joseph's Hospital | | These referral logs are created by quality coordinators to keep a record of each quality-of-care concern that is referred to the quality department for further patient safety activities (including but not limited to focus | 9 referral logs | Various dates within the five-year period from January 1, 2017 to December 31, 2021. | PSQIA<br>•Referral logs contain patient safety information gathered as part of BayCare's PSES for the improvement of patient safety and the quality of health care delivery;<br>•Referral logs also record the deliberatio |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | review, peer review, and track and trend). The referrals on the logs can come from a variety of sources including but limited to BayCare's Customer Experience Department, BayCare's Risk Department, and Division Chiefs at St. Joseph's | | | ns and analysis of team members acting within BayCare's PSES to assess whether particular issues show a potential to impact patient safety or quality of care;<br>• Referral logs are not |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hospital. The logs track the analysis by the quality coordinator as to what further patient safety activities should be conducted. | | | created to meet any external obligations. |

17

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 7 | Event Reports located in the rL Datix module used by BayCare's Risk Department | Patient-safety events brought to the attention of the risk managers assigned to St. Joseph's Hospital and BayCare Medical Group for review and analysis as to whether there was a deviation from the standard of care. | Various persons at St. Joseph's and BMG granted authority to file event reports within rL Datix. (This includes a broad range of clinical and non-clinical personnel). | Assigned members of BayCare's Risk Department who review and manage the report within rL Datix. | An event report is created when an authorized rL Datix user at St. Joseph's Hospital or BMG reports any circumstance that may involve a potential deviation from the standard of care provided by the facility. | There are approximately 33,000 event reports associated with care provided at St. Joseph's or BMG within the five-year period running from January 1, 2017 to December 31, 2021. It is very difficult to | Various dates from January 1, 2017 to December 31, 2021. | PSQIA • Event reports contain patient safety information gathered as part of BayCare's PSES for the improvement of patient safety and the quality of health care delivery; • Event reports record the |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 35 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event reports may involve any facet of care provided by the facility and are not limited to concerns about care provided by providers. Subjects of event reports may include nursing care, pharmacy operations, safety of the physical plant, and a | tell how many relate to provider care. A limited sampling suggests that the number could approach approximately 4,600 reports that might relate to the 16 listed physicians in | | deliberations and analysis of team members acting within BayCare's PSES to assess whether particular events show a potential to impact patient safety or quality of care; |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 36 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | variety of other concerns. All event reports are recorded and analyzed as part of the patient safety evaluation system, and all are reported to BayCare's PSO (ECRI) for improvement of patient safety. Any event report that is related to a specific | Plaintiff's RFP No. 6. It is extremely difficult to further extrapolate how many of those reports actually involve a recognized quality-of-care issue because a physician may be connected with the patient in a | | | • Event reports are not created to meet any external obligations. • All event reports are reported to BayCare's PSO (ECRI) |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 37 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | provider is referred to the facility's quality department for further review and analysis. | way that does not relate to the identified issue. | | |

USCA11 Case: 23-12571 Document: 1-3 Date Filed: 08/08/2023 Page: 38 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| 8 | Feedback files located in the rL Datix module used by St. Joseph's and BMG's assigned customer experience team members ("feedback files"). | Documented patient feedback that relates to the patient's experience at St. Joseph's Hospital or BMG including complaints about clinical outcomes, quality of care, treatment plans, and communications with BayCare staff | Authorized rL Datix users within St. Joseph's Hospital and BMG | Customer experience team members assigned to St. Joseph's Hospital and BMG who review, complete, and manage the feedback files. | Patient feedback is recorded in rL Datix's feedback module after the patient or the patient's family complains to BayCare's customer service department about a less-than-satisfactory experience. The feedback file is then analyzed as | There are approximately 6,600 feedback files associated with St. Joseph's or BMG within the five-year period running from January 1, 2017 to December 31, 2021. It is very difficult to tell how | Various dates within the five-year period from January 1, 2017 to December 31, 2021 | PSQIA<br>• Feedback files contain patient safety information gathered as part of BayCare's PSES for the improvement of patient safety and the quality of health care delivery;<br>• Feedback files also record the deliberation |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | part of the patient safety evaluation system and for the improvement of patient safety and the quality of healthcare delivery. If patient feedback is determined to relate to a quality-of-care concern involving a specific provider, that feedback | many relate to physician care. It is extremely difficult to further extrapolate how many of those feedback files actually involve a recognized quality-of-care issue because a physician may be connected | | s and analysis of team members acting within BayCare's PSES to assess whether particular events show a potential to impact patient safety or quality of care;<br>•Feedback files are not created to |

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | is referred to the facility's quality department for further patient-safety activities. Likewise, any patient complaint that identifies a potential deviation from the standard of care is referred to BayCare's Risk Department | with the patient in a way that does not relate to the identified issue. | | meet any external obligations. |

USCA11 Case: 23-12577   Document: 1-3   Date Filed: 08/08/2023   Page: 41 of 118

| Category No. | Type of Document | Subject Matter | Author | Recipient | Purpose | Number of Docs. | Date Created | Privilege/ Protection Claimed* |
|---|---|---|---|---|---|---|---|---|
| | | | | | for further patient-safety activities. | | | |

USCA11 Case: 23-12571   Document: 1-3   Date Filed: 08/08/2023   Page: 42 of 118

**KEY**
A/C = Attorney-Client Privilege
W/P = Work-Product Protection
PSQIA = Patient Safety Work Product Protection

    Respectfully submitted this 3rd day of June, 2022.

*/s/ Kevin D. Johnson*
Kevin D. Johnson
Florida Bar No.: 0013749
Colby J. Ellis
Florida Bar No.: 1019588
**JOHNSON JACKSON PLLC**
100 N. Tampa St., Suite 2310
Tampa, FL 33602
Telephone: (813) 580-8400
Facsimile: (813) 580-8407
    Email:
    kjohnson@johnsonjackson.com
    cellis@johnsonjackson.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court on this 3rd day of June, 2022, using the CM/ECF system, which will send a notice of electronic filing to all parties and counsel of record.

*/s/ Kevin D. Johnson*
Attorney

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

     Plaintiff,

     v.                            Case No.: 8:21-cv-01891

BAYCARE MEDICAL GROUP, INC.;
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

     Defendants.

_____/

## DECLARATION OF GILLIAN E. SMALL

1.     My name is Gillian E. Small. I am over the age of 18 years old, and I verify under 28 U.S.C. § 1746 that the facts set forth in this Declaration are true and correct and are made under penalty of perjury.

2.     I am employed by BayCare Health System as the Manager, Clinical Risk Management and have been employed in this capacity since 2019.

3.     It is my understanding that Tara Loux, M.D. ("Loux"), a former pediatric surgeon, has filed a lawsuit against BayCare Medical Group and St. Joseph's Hospital.

4.     As the Manager, Clinical Risk Management, I am familiar with BayCare's patient safety evaluation system (PSES) and BayCare's use of rL Datix

software to maintain and track patient customer complaints, event reports, and quality-of-care concerns related to physicians as part of the PSES.

5.  Issues are documented in rL Datix for different reasons and are maintained in different modules within the rL Datix system.

6.  BayCare team members are generally required to submit event reports whenever there is a potential deviation from the standard of care involving a patient.

7.  This documented event report is generated in rL Datix's risk module.

8.  The facility's assigned Risk Manager and the manager over the department where the deviation of care allegedly occurred receive access to review the event report in rL Datix.

9.  The Risk Manager reviews the event report, coordinates the investigation of the issue, determines if there was a deviation of care, and then conducts further patient-safety activities.

10. Meanwhile, the department manager investigates the issue, determines why the deviation of care occurred, and provides the results of the investigation into rL Datix for further review by the facility's Risk Manager.

11.     If an event report involves a deviation from the standard of care by a physician, the event report is referred to the facility's quality department so that it can review the issue and conduct appropriate patient-safety activities.

12.     All event reports documented in rL Datix's risk module are automatically sent to BayCare's patient safety organization (PSO), which is ECRI Institute. The event reports do not drop out of BayCare's PSES.

13.     If BayCare was asked to produce all event reports that relate to a specific physician, it would be burdensome to identify the responsive event reports.

14.     The risk module is not designed to collect data regarding specific physicians. The module tracks events that affect patient safety and focuses on the patient.  Many events that affect patient safety have nothing to do with care provided by the patient's physician.

15.     A physician's name would only be included in an event report if the name is notated in a specific field or in a narrative.

16.     Thus, the event reports in rL Datix's risk module are not readily searchable by physician. Because of this, keyword searches would have to be conducted on all the fields in an event report to determine whether a report relates to a specific physician.

17.     The Risk Department has found that rL Datix is not effective at conducting keyword searches containing multiple keywords and search parameters across the volume of event reports that are currently stored in the risk module. When more than one keyword filter is applied, the system becomes unstable and freezes. Once this type of crash occurs, it can take anywhere from an hour to a day or two to bring the module back online and functioning normally.

18.     To avoid these problems, the Risk Department typically exports a set of event reports from rL Datix to Microsoft Excel and then performs the search in Microsoft Excel using appropriate keyword filters.

19.     This process takes time and also carries risks. The event reports must be exported in small batches so as not to overload the system.

20.     Using this process to search for physician names would be difficult. Microsoft Excel only highlights the keywords in individual cells. Each highlighted cell must be reviewed and analyzed to determine if the event report involves a specific physician.

21.     To the extent that a physician shares a name with other members of the clinical staff, manual review is required to determine whether the report is referencing the physician.

22.     Although an event report may contain a physician's name, the named physician may not have been involved in the specific event that led to the event report being submitted.

23.     For example, an event report may involve a medication administration error by a nurse. Just because the event report lists the admitting physician's name does not mean that the admitting physician was involved in the medication error. That event report would not be related to any action taken by the specific physician but would be an initial result from a keyword search that would need to be reviewed because the physician's name was notated.

24.     There are approximately 33,000 documented event reports in the risk module of rL Datix that are associated with care provided at St. Joseph's Hospital or by BayCare Medical Group staff during the five-year period from 2017 to 2021.

25.     Based on a limited test run that we have conducted using the data from 2021 and the name "Reyes," our results can be extrapolated to predict that approximately 275 event reports would have to individually reviewed and analyzed if the full five-year period was searched for that name. Each one of those 275 event reports would need to be individually reviewed to determine whether they relate to Dr. Cynthia Reyes and not other physicians or non-physician staff. They would even need to be reviewed by an analyst qualified to

determine whether Dr. Reyes's involvement related to a potential quality-of-care concern. The event reports do not contain any box or field in which a member would have recorded their judgment as to whether the event involved a quality-of-care concern related to care provided by a physician. Thus, there is no way to sort or filter these records to select only those that involve physician quality-of-care issues.

26.     Our results can also be extrapolated to predict that if searches were conducted for the other listed physicians, then there would be approximately 4,675 event reports that would need to be individually reviewed and analyzed to determine if they relate to the listed physicians.

27.     Ultimately, searching the approximate 33,000 event reports to determine which event reports relate to specific physicians would be burdensome and would take significant time to complete.  It would require us to assign team members to conduct manual review of a large number of event reports.

28.     Any event reports that actually contain references to quality-of-care concerns involving a specific physician that merited peer review are likely to be duplicative of records contained in the "peer review" module of rL Datix and managed by the quality team.

29.     BMG and St. Joseph's quality departments would have been informed about any event report involving a physician-related quality-of-care concern. Thus, the quality departments would have been responsible for taking further appropriate patient-safety activities. If peer review was conducted on an issue, then there would be documentation in the respective "peer review" modules in rL Datix.

30.     Patient or customer complaints are generally documented in rL Datix's "feedback" module after the patient or the patient's family complains to BayCare's customer service center via phone, mail, or an online customer service form about a less-than-satisfactory experience.

31.     BayCare's Customer Experience Department is responsible for reviewing these rL Datix documented patient complaints. If the documented complaint involves a quality-of-care concern regarding a specific physician, then the documented complaint is generally shared with the facility's quality department to review and take further appropriate patient-safety activities.

32.     The Customer Experience Department also shares any patient feedback that relates to a potential deviation from the standard of care with the Risk Department. The Risk Department then conducts further patient-safety activities and maintains appropriate documentation.

33.     Like event reports, patient complaints in rL Datix are recorded in narrative form and rarely include a physician's name. Thus, the patient complaints cannot be easily filtered by physician.

34.     If BayCare was asked to provide all patient complaints in rL Datix's feedback module, which relate to a specific physician, the same search challenges exist as those that exist for searching event reports in the risk module. The search would be burdensome in that it would require significant time and effort and care would have to be taken not to crash the system.

35.     Keyword searches would have to be conducted in Microsoft Excel, and all results would have to be individually reviewed and analyzed to determine if the complaint actually relates to a specific physician.

36.     Although a patient complaint may list a physician's name, the complaint may not be about the actual physician.

37.     For example, a complaint may be about a billing issue or a cancellation of an appointment and list a physician's name because the physician's office was involved. Although the complaint did not relate to any action taken by the physician, the complaint would still have been an initial result from a keyword search to be reviewed and analyzed.

38.     There are approximately 6,600 patient feedback records in the feedback module of rL Datix that are associated with St. Joseph's Hospital or BayCare Medical Group during the five-year period from 2017-2021.

39.     Searching those 6,600 patient feedback records to determine which ones relate to specific physicians would be burdensome and take significant time to complete.

40.     Like the event reports, if a patient complaint involved a quality-of-care concern related to a physician, the Customer Experience Coordinator would have shared the patient complaint with BMG's or St. Joseph's quality department for review and further appropriate patient-safety activities. If peer review was conducted on the issue, then there would be documentation in the respective "peer review" modules in rL Datix.

41.     St. Joseph's quality department also keeps a log of any event reports or patient feedback files that are referred to the quality department because they involve a physician-related quality-of-care concern.

42.     The facts in this document are based on my personal knowledge and I would be able to testify about them. I declare under penalty of perjury that the foregoing is true and correct (28 U.S.C. 1746).

Executed on this 3rd day of June 2022.

_____

GILLIAN E. SMALL

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

      Plaintiff,                    Case No. 8:21-cv-01891-WFJ-TGW

v.

BAYCARE MEDICAL GROUP, INC.,
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

      Defendants.

_____/

## ORDER

      THIS CAUSE came to be heard on February 28, 2023 upon the Magistrate's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 82); Plaintiff's Objection to Magistrate's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 93); and Defendants' Response in Opposition to Plaintiff's Objection to Magistrate's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 94).

      It is, therefore, upon consideration,

      ORDERED:

      1.      Defendants, BayCare Medical Group, Inc. and St. Joseph's Hospital, Inc. (collectively, "Defendants") are ordered to submit to the Court for *in camera* review the 205 Quality Files described in Category No. 5 of Defendants' Amended Privilege Log (Dkt. No. 71) no later than April 28, 2023.

2.    Defendants shall submit an affidavit of a person with personal knowledge regarding whether any of the physicians for whom Plaintiff, Dr. Loux ("Plaintiff"), has requested information in her Requests for Production (see e.g. Request Nos. 1 and 6)  had any "Peer Review."  Peer Review is defined to include documents, discussions, or meeting(s) to determine whether any action should be taken regarding one of the identified physicians, including: (a) requiring additional education or training, (b) disciplinary action, (c) remediation, (d) privileging restriction, (e) proctoring, (f) collegial intervention, (g) a focused review, and/or (h) reporting to the National Practitioner's Data Bank, a state licensing board, the U.S. Drug Enforcement Administration, and/or the Florida Agency for Health Care Administration.  This affidavit shall be provided no later than April 28, 2023.

3)    Defendants shall provide to the Court the volume or number of documents making up the documents that are categorized as "Referral Logs" in Category No. 6 of the Amended Privilege Log. (Dkt. No. 71).  This information shall be provided no later than April 28, 2023.

DONE AND ORDERED at Tampa, Florida on April 10, 2023.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Amy L. Drushal, Esquire, adrushal@trenam.com
John D. Goldsmith, Esquire, jgoldsmith@trenam.com
Terin Barbas Cremer, Esquire, tcremer@barbascremer.com
Kevin D. Johnson, Esquire, kjohnson@johnsonjackson.com

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

      Plaintiff,                           Case No. 8:21-cv-01891-WFJ-TGW

v.

BAYCARE MEDICAL GROUP, INC.,
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

      Defendants.

_____/

## **ORDER**

      THIS CAUSE came to be heard on May 8, 2023, following the Court's receipt of additional information from Defendants, BayCare Medical Group, Inc. and St. Joseph's Hospital, Inc., as mandated by the Court's Order, dated April 10, 2023. (Dkt. No. 96). The Court heard argument from counsel for the Parties regarding the issues presented by the Magistrate Judge's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 82); Plaintiff's Objection to the Magistrate Judge's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 93); and Defendants' Response in Opposition to Plaintiff's Objection to the Magistrate Judge's Order on Defendants' Claim of PSQIA Privilege (Dkt. No. 94).

      During the hearing, the Court directed counsel for Plaintiff to reduce the number of physicians for whom Plaintiff is seeking discovery from 16 physicians to

10. In compliance with the Court's directive, Plaintiff has informed the Court that she has narrowed the list to the following 10 physicians:

Dr. Luis Martinez,
Dr. Grant Geisler,
Dr. John Fitzwater
Dr. Cynthia Reyes
Dr. Tuan Pham
Dr. Enrique Grisoni
Dr. Richard Hodges
Dr. Stephen Butler
Dr. Joshua Mitchell
Dr. Scott Cutler

It is, therefore, upon consideration,

ORDERED:

1.    Plaintiff and Defendants are ordered to submit to the Court a Proposed Stipulated Qualified Protective Order pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). This Proposed Order shall be submitted no later than June 16, 2023.

2.    Defendants shall submit to the Court, for *in camera* review, paper copies of the 9 Referral Logs described in Category No. 6 of Defendants' Amended Privilege Log (Dkt. No. 71) no later than June 16, 2023. If possible, those Logs shall be culled or redacted to contain only entries pertaining to the 10 physicians identified by Plaintiff. The Court's *in camera* review of these Referral Logs shall not result in a waiver of privilege under the Patient Safety and Quality Improvement Act of 2005.

3.      To the extent that the physician identified by Gill Small pursuant to paragraph 9.a of her declaration dated April 28, 2023, is one of the 10 physicians identified by Plaintiff, Defendants shall submit to the Court for *in camera* review the Code 15 Report for this physician no later than June 16, 2023.

4.      The Court finds that the Quality Files described in Category No. 5 of Defendants' Amended Privilege Log (Dkt. No. 71) that pertain to the 10 physicians identified by Plaintiff are not privileged under PSQIA because they are dual-purpose records that Defendants were required to make by Florida Statutes, § 395.0193(2). To the extent that the Magistrate Judge's Order held otherwise, the Court finds it to be clearly erroneous. Defendants are required to produce the Quality Files described in Category No. 5 of Defendants' Amended Privilege Log (Dkt. No. 71) that pertain to the 10 physicians identified by Plaintiff to Plaintiff no later than June 16, 2023.

5.      Plaintiff's Motion to Compel the documents identified in categories 7 and 8 of Defendants' Amended Privilege Log (Dkt. No. 40) is denied without prejudice.

DONE AND ORDERED at Tampa, Florida on May 26, 2023.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Amy L. Drushal, Esquire, adrushal@trenam.com
John D. Goldsmith, Esquire, jgoldsmith@trenam.com
Terin Barbas Cremer, Esquire, tcremer@barbascremer.com
Kevin D. Johnson, Esquire, kjohnson@johnsonjackson.com
Ashley T. Gallagher, Esquire, agallagher@johnsonjackson.com

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

      Plaintiff,

      v.                              Case No.: 8:21-cv-01891

BAYCARE MEDICAL GROUP, INC.;
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

      Defendants.

_____/

## DEFENDANTS' CORRECTED[1] MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MAY 26, 2023, (DKT. NO 103) AND MOTION TO STAY COMPLIANCE AS TO PRODUCTION OF QUALITY FILES

      Defendants BAYCARE MEDICAL GROUP, INC. and ST. JOSEPH'S

HOSPITAL, INC. (collectively "Defendants") respectfully move for

reconsideration of the portion of the Court's Order dated May 26, 2023 (the

"Order"), that requires Defendants to produce to Plaintiff the 205 "Quality Files"

identified in category number 5 of Defendants' Amended Privilege Log (Dkt. No.

103) pursuant to Rules 59(e) and/or 60(b) of the Federal Rules of Civil Procedure.

---

[1] This Motion has been refiled to include Exhibit A.

Defendants also move for a stay of Part 4 of the Court's Order pending the

Court's resolution of this issue. In support of the foregoing, Defendants submit

the following Memorandum of Law.

## MEMORANDUM OF LAW

### I.      INTRODUCTION

Congress adopted the Patient Safety and Quality Improvement Act

("PSQIA") to encourage health care providers to conduct patient-safety activities.

To alleviate providers' concerns about the self-critical analysis at the heart of

these activities, Congress provided a broadly applicable privilege to prevent this

patient-safety work product ("PSWP") from being used against providers in

litigation.

PSQIA broadly defines PSWP to include information reported by a

provider to a Patient Safety Organization ("PSO"), as well as any information

that identifies the deliberations or analysis conducted within the provider's

Patient Safety Evaluation System ("PSES") to determine whether reporting is

necessary. Congress provided only two limitations on this definition – (1) PSWP

does not include original provider records such as a patient's medical record or

billing information, and (2) PSWP does not include information that is collected,

maintained, or developed separately from the provider's PSES. The Department

of Health and Human Services ("HHS") has interpreted the second limitation to mean that information that is needed to comply with external reporting obligations cannot be deemed PSWP.

Thus, PSQIA provides for broad statutory protection of PSWP, with a narrow exclusion for information that is created to meet external reporting obligations.

In the discovery dispute currently before the Court, Dr. Loux has urged (and the Court has adopted) a construction of PSQIA that contradicts this statutory approach. Under this construction, the protection provided by the privilege would be vanishingly narrow and the scope of the exception would be exceedingly broad.

This construction is clearly erroneous, for the following reasons:

1. The Court's analysis fails to identify a specific external reporting obligation that the quality files were created to satisfy.

2. The Court's analysis improperly attempts to transform the general requirement that hospitals conduct "peer review" into a specific external reporting obligation.

3. The Court's analysis fails to properly account for HHS's guidance, which states that hospitals may use PSWP for a variety of uses, specifically including peer review.

3

4. The Court's analysis would render the "drop out" provision provided in PSQIA a nullity and take away Defendants' ability to create separate documentation to comply with external reporting obligations.

5. The Court's analysis leaves providers with no readily apparent dividing line between activities that can remain privileged and activities that cannot, which will effectively chill an unacceptably broad range of patient-safety activities.

The results of this decision will reverberate far beyond their immediate consequences in this matter. By adopting such a broad standard for excluding information, the Court will greatly reduce the effectiveness of the PSQIA privilege.

Because the standard adopted by the Court is not consistent with the text of the statute, leads to results that are not consistent with PSQIA's purpose, and is not based on substantial evidence to support the Court's conclusions, it is clearly erroneous. Because the Court's order will also create significant disruption in the patient-safety activities conducted by Florida hospitals, to the potential detriment of the safety of patients in those hospitals, it will create manifest injustice. For those reasons, the Court should reconsider its decision.

## II.    LEGAL ARGUMENT

**A.      Reconsideration is warranted to avoid manifest injustice because the Court's May 8 order is based on erroneous legal premises, lacks factual support from the evidence presented by Plaintiff, and will create immediate negative consequences for Defendants' ability to engage in patient-safety activities.**

Motions for reconsideration may serve to correct manifest errors of law or fact. <u>Monticello Ins. Co. v. Dynabilt Mfg. Co.</u>, No. 605CV548ORL19DAB, 2005 WL 2578715, at *2 (M.D. Fla. Oct. 13, 2005). The Eleventh Circuit recognizes three grounds for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to prevent manifest injustice or to correct clear error. <u>Id.</u>

This motion is premised on the third ground – the need to prevent manifest injustice and prevent clear error. In determining whether that standard has been met, the Court can rely on the following elaboration of the relevant test:

> Courts in the Eleventh Circuit have substantial discretion when presented with a motion to reconsider premised on manifest injustice. <u>Medley v. Westpoint Stevens, Inc.</u>, 162 F.R.D. 697, 698 (M.D. Ala. 1995) (internal citations omitted). "[A] manifest injustice analysis requires a 'fact-specific' analysis that resides in the discretionary authority of the reviewing court." <u>Salinas v. Hart</u>, no. 15-167-HRW, 2020 WL 1560061, at *3 (E.D. Ky. Apr. 1, 2020). "The movant must be able to demonstrate that the underlying judgment caused them some type of injustice which could be avoided if the judgment were reconsidered. Essentially, the movant must be able to show that altering or amending the underlying judgment will result in a change in the outcome in their favor."

<u>Pottayil v. Thyssenkryupp Elevator Corp.</u>, 574 F. Supp.3d 1282, 1301 (11th Cir. 2021).

Here, the Court's May 26 order is based on an erroneous perception of the type of "external reporting obligation" that can prevent information from being treated as PSWP. And even if the arguments advanced by Plaintiff and adopted by the Court were legally sound, Plaintiff failed to establish the factual predicates necessary to support her arguments.

If the Court's order is allowed to go forward unchanged, it will have immediate and serious consequences on the willingness of Defendants' providers to engage in patient-safety activities. Defendants are deeply concerned that their providers will quickly spread the word that despite all the promises made to them by the Defendants about reporting and analysis in the patient-safety context being protected by a strong privilege, their activities do not in fact receive protection under the PSQIA privilege.

In essence, the Court's ruling would require hospitals to assume that any record in which a physician reports on unexpected complications from a procedure or in which one of the physician's peers offers an assessment of those complications must be deemed a potential "peer review" document, which by the Court's definition cannot be privileged under PSQIA. Any such document could thus serve as the basis for a medical malpractice suit brought by a patient, or a defamation action brought by a peer. Knowing this, providers will likely become much more skittish about reporting complications and much less likely

to provide candid reviews of the quality of the care provided by the physician to the patient who suffered those complications. These effects are not only predictable – they are also virtually certain to affect hospitals' ability to engage in the patient-safety activities that PSQIA was designed to promote.

Reconsideration of the Order will allow the Court to correct these issues. It will also avoid the long-term damage to the relationship between Defendants and their physicians that would occur if the Court stands by its initial decision to require production of these highly-sensitive records that lie at the heart of Defendants' PSES. In short, reconsideration would avoid manifest injustice.

**B.      The Court erred in concluding that the Quality Files were not protected by PSQIA privilege.**

In ruling on Plaintiff's objections to the Defendants' claim of PSQIA privilege for their Quality Files, the Court's analysis failed to follow the clear text of the definition of PSWP, failed to assess whether the statute cited by plaintiffs placed a specific external reporting obligation upon Defendants, failed to identify whether Defendants were in violation of that obligation, failed to address whether Defendants would have been required to create the Quality Files to meet that specific reporting obligation, and failed to identify evidence showing that Defendants had attempted to evade that requirement by placing the Quality Files in their PSES instead.

**1.  Plaintiff does not dispute that Defendants' evidence was sufficient to satisfy the definition of PSWP found in the statute.**

Because the PSQIA privilege is a creature of federal statute, any analysis must start with the plain text of the definition provided by that statute. Congress set out the relevant definition for purposes of PSQIA at 42 U.S.C. § 299b-21(7)(A). There, "patient safety work product" is defined as:

> …any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements –
> (i) which
>> (I) are assembled or developed by a provider for reporting to a patient safety organization;
>> (II) are developed by a patient safety organization for the conduct of patient safety activities;
> and which could result in improved patient safety, health care quality, or health care outcomes; or
> (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

Id.

When information meets this definition, it is subject to a privilege against disclosure that extends to any "discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding . . ." 42 U.S.C. § 299b-22(a)(2).

Defendants' briefing and their supporting declarations establish beyond any doubt that the Quality Files meet the definition of PSWP set forth in 42 U.S.C. § 299b-21(7) because they were assembled or developed by BayCare within its PSES to record the deliberations and analysis of personnel tasked with determining whether various issues have the potential to impact patient safety or

quality of care.  (See, e.g., Dkt. No. 71; see also Exhibit. A, Affidavit of Amy

Villareal, ¶¶ 3-7, 15). Plaintiff does not challenge the applicability of this portion

of the definition.

> **2.     Plaintiff failed to submit evidence that would satisfy the plain language of the exclusion found in subparagraph (B)(ii) – that Defendants collected, maintained, or developed the Quality Files outside the framework of their PSES.**

Instead, Plaintiff's challenge focuses on the clarification contained in

subparagraph B(ii), which provides that "information described in subparagraph

(A) does not include information that is collected, maintained, or developed

separately, or exists separately, from a patient safety evaluation system. Such

separate information or a copy thereof reported to a patient safety organization

shall not by reason of its reporting be considered patient safety work product."

But Plaintiff has failed to submit one iota of evidence to show that Quality

Files were "collected, maintained, or developed separately" from Defendants'

PSES. To the contrary, all available evidence shows that the Quality Files were

created and maintained within the rL Datix database that houses the majority of

Defendants' PSES. (See, e.g., Dkt. No. 62-1, ¶35; Exhibit A, Affidavit of Amy

Villareal, ¶¶ 7, 9, 10, 50).

Nor did Plaintiff succeed in showing that the Quality Files "exist

separately" from Defendants' PSES. Plaintiff did not offer even a single

deposition cite in support of that proposition.

When considered in view of the plain language of the statute, Defendants'

Quality Files are unmistakably covered by the plain language of the definition

found in subparagraph (A) and not within the plain language of the exclusion

found in subparagraph (B). Thus, Defendants' claim of PSQIA privilege was

valid on its face and consistent with the statutory text.

> **3.**     **Plaintiff's argument that the Quality Files were not prepared for the "sole purpose" of reporting to a Patient Safety Organization because they were allegedly used for internal peer review is not supported by the law, as HHS has expressly recognized the possibility that PSWP may also be used to conduct internal peer review.**

Lacking any evidence that the Quality Files had actually been prepared or

maintained separately from the PSES, Plaintiff argued instead that the Quality

Files could not be PSWP because they had not been prepared for the "sole

purpose" of reporting to a PSO. But HHS's explanation of its own regulations

makes abundantly clear that a provider can use information that is created for

reporting to a PSO (or the analysis that precedes such reporting) for multiple

internal purposes: "uses of patient safety work product within a legal entity are

not regulated and thus, patient safety work product may be used within an

entity for any purpose. . . ." Department of Health Human Services, Patient

Safety and Quality Improvement, 73 Fed. Reg. 70,779 (Nov. 21, 2008) (to be

codified at 42 C.F.R. pt. 3). Notably, this response was given to a comment in

which the commenter proposed to use PSWP for "credentialing, disciplinary,

**and peer review purposes**." Id. (emphasis added). Thus, HHS's explanation of its regulations **expressly recognizes the possibility that a provider may also use PSWP for "peer review" purposes**.

Plaintiff bases her "sole purpose" argument on an overreading of Penman v. Correct Care Solutions, LLC, 2020 WL 4253214 (W.D. Ky 2020). In Penman, the court held that the party claiming privilege had not provided enough information to allow the court to determine that the specific document at issue had been created for reporting to a PSO, as opposed to having been created to satisfy an external reporting requirement. Id. at 4-5. In reaching that ruling, the Court commented that the declarant had not stated that a particular report was created for the "sole purpose" of reporting to a PSO. Id. at *4.

Plaintiff attempts to twist this dicta into a new doctrine – that a document must be created for the "sole purpose" of reporting to a PSO. But this purported rule was not necessary to the holding of either Penman or the other case cited by Plaintiff – Herriges v. County of Macomb, Case No. 2:2019 cv 12193 (Doc. 77) (E.D. Mich. August 24, 2020).  Neither court was able to conclude that the document at issue before it had ever been reported to a PSO. Thus, the question at issue in both cases was not whether a second purpose existed alongside the recognized statutory purpose, but whether the statutory purpose had ever existed at all. Thus the Penman court's "sole purpose" phrasing is mere dicta.

Notably, the phrase "sole purpose" appears nowhere in the text of the statute. Nor does it appear at any point in the definition of PSWP contained within the regulations issued by HHS in 2008. See generally Department of Health Human Services, Patient Safety and Quality Improvement, 73 Fed. Reg. 70,779 (Nov. 21, 2008) (to be codified at 42 C.F.R. pt. 3). Even the 82-page explanation of those regulations issued by HHS does not use that phrase. See id. While the phrase "solely for reporting to the PSO" does appear in a 2016 guidance document issued by HHS, the phrase is used in relation to a question as to how copies of PSWP should be handled, and HHS does not seem to recognize that the use of this adverb - if taken at face value – could be read as a substantial change in the applicable doctrine that ran directly contrary to the regulations it had issued (and the explanation that it had provided) only eight years earlier. See Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 2016 WL 2958759, at *32,658 (May 24, 2016). Thus, to the extent that the Court's ruling rested on Plaintiff's attempt to read a "sole purpose" requirement into PSQIA, that reading is not supported by the text of the statute or the regulations and should be rejected.

4.   **To the extent that the Court's ruling rests on the premise that the Quality Files were created by Defendant to meet an external obligation to conduct peer review, the ruling is not supported by the law or the evidence.**

Plaintiff also argued that the Quality Files could not be PSWP because Defendants had created them to comply with state licensure requirements as well as accreditation requirements. This is a fairly standard argument under PSQIA – that the records in question were created to satisfy an external reporting requirement. However, this argument fails for multiple reasons.

In its explanation of what it means for documents to be "collected, maintained, or developed separately," HHS has advised providers that documents created to satisfy an external reporting requirement under state law cannot be deemed PSWP.  Specifically, HHS's explanation of the 2008 Final Rule provides the following guidance:

> Information is not patient safety work product if it is collected to comply with external obligations, such as state incident reporting requirements; adverse drug information reporting to the Food and Drug Administration (FDA); certification or licensing records for compliance with health oversight agency requirements; reporting to the National Practitioner Databank of physician disciplinary actions; complying with required disclosures by particular providers or suppliers pursuant to Medicare's conditions of participation or conditions of coverage; or provisions of access to records by Protection and Advocacy organizations as required by law.

Department of Health Human Services, Patient Safety and Quality Improvement, 73 Fed. Reg. 70,742-43 (Nov. 21, 2008) (to be codified at 42 C.F.R. pt. 3). To satisfy this test, Plaintiff had to show that Defendants created the Quality Files to satisfy a specific external reporting requirement. But none of the

depositions taken by Plaintiff confirmed that hypothesis. Plaintiff offered nothing more than sheer speculation that the records must have been created for an external purpose.

But what purpose?

Plaintiff argued that they had been created for the purpose of "peer review." Of course, as noted above, the PSQIA regulations make clear that peer review can be an acceptable internal use of PSWP. Thus, Plaintiff had to go beyond just showing that the documents had been used for peer review – she had to link them to some reporting obligation imposed by an external source.

One possible obligation proposed by Plaintiff is that Defendants were required to conduct peer review under Florida Statute § 395.0193(2) as a condition of licensure. This proposal falls short of the mark.

To start with, § 395.0192 does not place specific external recordkeeping obligations upon Defendants, with the exception of requiring them to maintain agendas and minutes of peer review hearings.[2] Furthermore, Defendants' declarations and/or affidavits make clear that the Florida Agency for Health Care Administration ("AHCA") has never requested that Defendants provide their Quality Files to AHCA to satisfy a specific reporting obligation. (See Dkt.

---

[2] Defendants have provided evidence that they maintain agendas and minutes separately and that the Quality Files were not created for that purpose. (See Dkt. No. 62-1, ¶ 37; Exhibit A, Affidavit of Amy Villareal, ¶¶ 7, 8, 43).

No. 62-1, ¶ 36; Exhibit A, Affidavit of Amy Villareal, ¶ 7-9).  Plaintiff has not

refuted that evidence.

Should Plaintiff be permitted to hypothesize the existence of reporting

obligations without proof that they exist? Should Plaintiff be able to hypothesize

that an enforcing agency would expect Defendants to submit such reports

without any proof that the agency actually does require their production?

Nothing in the HHS regulations suggests that this is permitted.

Even if Plaintiff were permitted to do so, it seems highly unlikely that she

could go forward based on mere speculation that Defendants must have failed to

meet these supposed obligations. The whole premise of the definition found in

the statute is that providers must meet external reporting obligations with

separately-held documentation. As the court in Baptist Health Richmond, Inc. v.

Clouse recognized, so long as a provider fulfills its "statutory and regulatory

reporting obligations," the trial court "has no reason to review the information in

the provider's patient safety evaluation system." 497 SW.3d 759, 766 (Ky. 2016).

Thus, to the extent that Plaintiff was arguing that she had identified an

external reporting obligation that applied to Defendants, she should have been

required to go further and show either that (1) Defendants intentionally created

the Quality Files to meet that obligation, or that (2) Defendants have failed to

meet that obligation with separately-held documents, and it should be presumed that they will need to use the Quality Files to meet that obligation.

Plaintiff has done neither. She has not shown that Defendants intentionally created the Quality Files to meet a specific reporting obligation.  Nor has she shown that Defendants have failed to meet a specific reporting obligation with separately-held documents, thus necessitating the use of the Quality Files.

In any event, the so-called "obligations" hypothesized by Plaintiff are not the type of specific external reporting obligations for which PSQIA envisions documents needing to be created or maintained.

HHS routinely refers to the obligations throughout its explanation of the 2008 rule and its 2016 guidance as "reporting" requirements. All of the examples provided by HHS in its explanation of the 2008 rule involve specific requirements for external **reporting** or **disclosure**:

- State incident reporting requirements;
- Adverse drug event information reported to the Food and Drug Administration (FDA);
- Certification or licensing records for compliance with health oversight agency requirements;
- Reporting to the National Practitioner Data Bank of physician disciplinary actions;
- Complying with required disclosures by particular providers or suppliers pursuant to Medicare's conditions of participation or conditions of coverage; or
- Provision of access to records by Protection and Advocacy organizations as required by law.

Department of Health Human Services, Patient Safety and Quality Improvement, 73 Fed. Reg. 70,742-43 (Nov. 21, 2008) (to be codified at 42 C.F.R. pt. 3).

When interpreting a statute, the canon of ejusdem generis limits general terms which follow specific ones to matters similar to those specified. United States v. Alpers, 338 U.S. 680, 683 (1950).  Likewise, the canon of noscitur a sociis holds that a word is known by the company it keeps. Yates v. U.S., 574 U.S. 528, 543 (2015) (citing United States v. Williams, 553 U.S. 285, 294 (2008) for the proposition that "a word is given more precise content by the neighboring words with which it is associated"). In short, context plays a critical role in statutory analysis. [3]

Thus, in Yates, although a grouper could be deemed a "tangible object," it was not a tangible object that was also a record, as the context of the statute required. Here, although the obligation to perform peer review may be an "obligation," it is not a reporting obligation, as the context of the regulation requires.

When applied to the list of examples specified by HHS, these principles spotlight the differences between the types of obligations on HHS's list and the ones that Plaintiff proposes to add. HHS's examples share some common

---

[3] While the Latin names for these canons add a certain formality to the argument, it is the Sesame Street canon that really cuts to the chase: "one of these things is not like the others."

characteristics: the obligations at issue **are** mandated by a specific law or rule, they involve an affirmative duty to make a specific type of report or disclosure to an external agency, the type of information to be provided can be defined with reasonable specificity, and the provider can recognize that specific circumstances will trigger the reporting obligation.

In contrast, the "obligation" of peer review identified by Plaintiff is not a recordkeeping obligation but a general condition of operation. The "obligation" of peer review on which Plaintiff relies does not identify any specific disclosures that must be made, does not give providers clarity as to the type of information that must be provided, and does not give providers any inkling of specific circumstances that will trigger a reporting obligation. Certainly nothing in Florida Statute § 395.0192 commands providers to "create Quality Files and disclose them to AHCA under these specific circumstances."

Furthermore, deeming any activity that relates to peer review to be an "external reporting requirement" would expand the exception so broadly as to blow up the fundamental balance struck by PSQIA. The PSQIA privilege is expressly structured to provide for a broad privilege and limited exceptions.

Simply put, PSQIA was enacted to save lives. See 151 Cong. Rec. H6673-01, H6676, 2005 WL 1771386. With the purpose of saving lives in mind, "PSWP" was defined broadly enough "to assure that providers will feel safe and secure in

participating in a patient safety system" and "not chilled from participating by fear that their efforts to **assemble, analyze, deliberate on, or report** patient safety information to [PSOs] would somehow fall outside of a too-narrow statutory definition of [PSWP]." 151 Cong. Rec. S8741-02, S8741, 2005 WL 1709504 (emphasis added). HHS has explained that "[t]o encourage voluntary reporting of patient safety events by providers, the protections **must be substantial and broad enough** so that providers can participate in the system without fear of liability or harm to reputation."  Department of Health Human Services, Patient Safety and Quality Improvement, 73 Fed. Reg. 70,741 (Nov. 21, 2008) (to be codified at 42 C.F.R. pt. 3) (emphasis added). By comparison, HHS describes this broad privilege as "subject to the *limited* exceptions set forth in [PSQIA]." Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 2016 WL 2958759, at *32,659 (May 24, 2016) (emphasis added).

But adopting Plaintiff's definition would mean that the "limited" exceptions for specific external reporting obligations would no longer be limited – instead they would be so broad as to swallow the rule.  This comes about because Plaintiff's definition of peer review is itself so broad as to be unintelligible.

St. Joseph's has made clear that the Peer Review Committee of the St. Joseph's Hospital Medical Staff conducts peer review hearings when appropriate for any provider that holds privileges at the hospital. (See Exhibit A; Affidavit of Amy Villareal, ¶¶ 39-42). Plaintiff has not been able to show that the Quality Files were prepared for the use of the Peer Review Committee or that they were even reviewed by the Peer Review Committee.

No matter – Plaintiff has decided that she does not need such evidence. Instead, she simply bootstraps her way past the problem (as she does with so many of the problems with her argument) by simply declaring that the Quality Files are peer-review-like, even if there is no evidence that the hospital's designated peer review entity ever used them.

Under this broad definition, a Venn diagram would likely show that the activities conducted by a hospital to improve patient safety would overlap tremendously with the opportunities for a hospital to engage in "peer review" (if by that one means only that the activity might reveal something about the competence of the provider who oversaw the procedure in question). And under the analysis proffered by Plaintiff and adopted by the Court, all of those patient-safety activities would be ineligible for protection as PSWP.  Thus, the statute would flip overnight from "broad protection subject to limited exceptions" to "limited protection subject to broad exceptions."

The Supreme Court has said on several occasions that Congress does not hide elephants in mouseholes. Whiteman v. American Trucking Assns., Inc., 531 U.S. 457, 468 (2001) (citing MCI Telecomm. Corp. v. American Tel. & Tel. Co., 512 U.S. 218, 231 (1994); FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159-60 (2000)). If Congress is not allowed that option, it certainly doesn't make sense to grant it to an administrative agency such as HHS, which can only exercise the power delegated to it by Congress. Thus, neither HHS nor Plaintiff should be allowed to rewrite the statutory definition that focuses on whether information has been "created, maintained, or developed separately . . . from a PSES" to substitute an overbroad definition that hinges on whether information could possibly be used to assist the hospital in carrying out a general obligation to conduct peer review.

In summary, because broadly applicable statutory requirements such as "perform peer review," "engage in risk management," or "accept needy patients" do not establish specific external reporting requirements and are different in quality and character from the types of external reporting obligations identified in the HHS regulations, they cannot serve as the basis for stripping Defendants of an otherwise clearly applicable PSQIA privilege.

> **5.   Plaintiff also failed to make a permissible alternative showing -- that the Defendants had used PSQIA's "drop-out" mechanism to remove the Quality Files from the PSES to meet a specific external reporting obligation.**

Even if Plaintiff or the Court believes that there is some possibility that AHCA might in the future require Defendants to disclose the type of information contained in the Quality Files – either to comply with Section 395 of the Florida Statutes or to comply with some other unspecified law, rule, or regulation -- PSQIA still permits Defendants to keep the Quality Files privileged until that day comes.  When the potential need for disclosure is unclear, HHS guidance explicitly allows providers to keep information within the PSES—where it stays privileged—until there is a need for it to be used to satisfy an external requirement. <u>See</u> Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 2016 WL 2958759, at *32,659 (May 24, 2016).

At that point, the provider has two options. One option is to remove the information from the PSES and use it to satisfy the external obligation that has arisen. This is known as the "drop-out provision," which HHS explains:

> [T]he drop out provision is intended as a safety valve for providers who are unsure at the time that information is being prepared for reporting to the PSO whether similar information would, at a later time, be needed for an external obligation. It is intended to be used on a case-by-case basis. Under the drop out provision, **if the provider later determines the information within its PSES that had originally been assembled or developed for reporting to a PSO will *instead* be used for an external obligation, it is removed from the PSES and is no longer PSWP.**

Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 2016 WL 2958759, at *32,659 (May 24, 2016) (emphasis added).

But the provider also has a second option. PSQIA allows the provider to keep the original documents within the PSES and to conduct a new analysis outside the PSES to create the information required to satisfy the external obligation, "regardless of whether such additional analysis involves issues identical to or similar to those for which information was reported to or assessed by a PSO or PSES." Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 2016 WL 2958759, at *32,659 (May 24, 2016).

In this case, the Court's May 26 Order stripped Defendants of both options. The Order requires the Quality Files to be produced even though no specific external obligation has arisen that would require Defendants to produce that information to AHCA. And even if such an obligation had arisen, the Court's order does not allow Defendants to exercise the option of recreating the analysis outside the PSES and submitting the new analysis to AHCA.[4]

---

[4] Plaintiff may complain that this would allow Defendants to create new documentation to satisfy whatever reporting obligation to the state is at issue, and that this new information might not have the same evidentiary value for her case. Any such complaint should be disregarded, as the HHS guidance clearly allows a provider to create a new analysis. HHS's approach is consistent with both the text and purpose of the statute. The purpose of the "clarification" found in subparagraph B(ii) of the statutory definition is to minimize the

The declarations submitted by Defendants show that Defendants had a good-faith basis for believing that they could treat the Quality Files as PSWP. As noted above, the Quality Files clearly meet the definition of PSWP under subparagraph (A)(1) because they record the deliberations and analysis that BayCare engages in when conducting patient-safety activities for potential reporting to BayCare's PSO. Furthermore, those who are responsible for maintaining the PSES are unaware of AHCA ever previously requiring Defendants to produce the information contained in the Quality Files to satisfy an external reporting requirement. Thus, Defendants were justified in placing the Quality Files within their PSES and using them for patient-safety activities.

In the face of that evidence, if Plaintiff intended to argue that the evidence was no longer privileged because it had dropped out of the PSES, Plaintiff should have been required to prove both that an external reporting obligation had arisen **and** that Defendants had chosen to satisfy that obligation by using the drop-out provision to remove the Quality Files from the PSES (as opposed to creating a new analysis to satisfy the newly-discovered external reporting

---

interference of this federal privilege with state regulatory requirements. So long as the state is allowed to get the reporting that it needs without the provider interposing PSQIA privilege as a barrier, the exception has served its purpose. Defendants are unaware of any evidence that Congress intended the clarification found in Section B(ii) to serve as an evidence-collection tool for plaintiffs.

obligation). It is unclear if Plaintiff was attempting to make that argument. But if she was, her evidence failed on both counts.

For all the reasons cited above, the Court's Order of May 26 is clearly in error and its enforcement will result in manifest injustice. The Court should take this opportunity to reconsider its Order.

**C.   While this motion is under consideration, the Court should grant Defendants a stay of their obligation to comply with the portion of the Order that requires production of the Quality Files.**

The harms that would flow from the required production of Quality Files are immediate in nature. Both Defendants' relationship with their physicians and the protective conditions that ensure the physicians' willingness to participate in patient-safety activities will be immediately damaged as word spreads of the Court's ruling. That damage cannot be easily corrected – it is the proverbial bell that "cannot be unrung." For that reason, Defendants ask that the Court stay the effective date of Paragraph 4 of its order until Plaintiff has had an opportunity to respond to this Motion and the Court has been able to rule on it.

**III.       CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court reconsider its Order dated May 26, 2023, requiring Defendants to produce the Quality Files and stay Defendants' obligation to produce the Quality Files while this request is under consideration.

Respectfully submitted this 16th day of June, 2023,

/s/ Kevin D. Johnson_____
Kevin D. Johnson, Esquire
Florida Bar No.: 0013749
Ashley T. Gallagher, Esquire
Florida Bar No.: 125141
Johnson Jackson PLLC
100 N. Tampa Street, Suite 2310
Tampa, FL 33602
Telephone: (813) 580 - 8400
Facsimile: (813) 580 - 8407
E-mail: kjohnson@johnsonjackson.com
agallagher@johnsonjackson.com
Secondary E-mail:
lkick@johnsonjackson.com
lesposito@johnsonjackson.com
*Attorneys for the Defendant*

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I have conferred with counsel for Plaintiff by

email, and Plaintiff opposes the relief sought in this motion.

/s/ Kevin D. Johnson_____
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk

of the Court on this 16th day of June 2023, using the CM/ECF system, which will

send a notice of electronic filing to all parties and counsel of record.

/s/ Kevin D. Johnson_____
Attorney

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

    Plaintiff,

    v.                        Case No.: 8:21-cv-01891

BAYCARE MEDICAL GROUP, INC.;
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

    Defendants.

_____/

### AFFIDAVIT OF AMY VILLAREAL

BEFORE ME, the undersigned authority, personally appeared Amy Villareal, who after being duly sworn, deposes and says as follows:

1.      My name is Amy Villareal. I am over the age of 18 years old. I have personal knowledge of the facts stated herein unless otherwise indicated.

2.      I am employed by BayCare Health System, Inc. ("BayCare") as the Manager of Quality and Safety at St. Joseph's Hospital and have been employed in this capacity since October 2016.

3.      As the Manager of Quality and Safety at St. Joseph's Hospital, I am familiar with the policies and procedures governing the review by St. Joseph's

1

EXHIBIT A

Hospital's quality department of customer complaints, event reports, quality-of-care concerns (hereafter, "concerns") related to physicians.

4.      The purpose of this review is to achieve the best possible outcomes in patient care and improve processes that lead to instances of suboptimal care or errors.

5.      Since approximately 2016, BayCare's Quality Coordinators have used software provided by rL Datix to maintain and track any reported concerns related to physicians. The activities of the Quality Coordinators are considered to be patient safety activities and are treated as part of BayCare's patient safety evaluation system ("PSES").

6.      BayCare's PSES is a system for collecting, managing, and analyzing patient safety work product (PSWP), which is information that is evaluated for reporting to a Patient Safety Organization (PSO). The PSES provides a protected environment for consideration and analysis of quality and safety information by various team members, departments, and internal committees at the various facilities affiliated with BayCare.

7.      None of the PSWP created in the rL Datix software is created to comply with any external obligations, including but not limited to requirements imposed by statutory law, the Joint Commission, and/or the Florida Agency for Healthcare Administration ("AHCA").

8.    To the extent that BayCare is subject to specific recordkeeping requirements imposed by statutory law or the above agencies, those documents are maintained outside the PSES.  For example, agendas and minutes of the meetings of the Peer Review Committee are maintained by the various Medical Staffs and are not placed within the PSES.

9.    Likewise, when BayCare is subject to external reporting requirements such as the Code 15 reports that must be prepared to inform AHCA of a reportable incident, BayCare does not pull documents maintained in its PSES out of the PSES and send them to the agency. Instead, an original report is created directly within AHCA's online reporting system using the agency's fillable form.

10.    If AHCA or any other agency requests information or has any questions regarding a specific event, the Quality Department may use information stored in rL Datix to conduct additional analyses. Those additional analyses may be used to answer those questions, but the information contained in rL Datix is not disclosed to the agency requesting said information and is not otherwise removed from rL Datix.

11.    The Quality Department employs Quality Coordinators to manage the flow of information within the PSES. These coordinators are typically Bachelor's prepared in Nursing.  A coordinator will typically have responsibility

3

for managing information regarding either a single hospital or a group of facilities that, taken together, result in a similar workload.

12.     The Quality Department receives referrals about potential quality issues from multiple sources.

13.     The coordinators track the referrals they receive using a referral log.

14.     Referral logs are saved within the Quality Department's secure "shared drive".

15.     As the coordinator evaluates the referral, the coordinator adds information into the module to create a file about the issue. These files are what have been referred to in this lawsuit as "Quality Files".

16.     The coordinator can record information within different fields in the file.

17.     The information contained within the module can be exported to a hard copy document using several different formats.

18.     In this case, the Quality Department was asked to identify information showing any referrals for 16 specific physicians.

19.     The Quality Department exported that information from rL Datix into an Excel document and provided it to legal counsel for review.

20.     I understand that the Court has ordered that document to be produced for the Court to review in camera.

21.     I have been asked to provide a description of the various fields contained in the document that will be provided to the Court.

22.     Each row within that document contains the contents of a single "quality file" maintained in rL Datix.

23.     The columns within the document represent the different fields within an rL Datix quality file and contain the information entered into those fields by the coordinator.

24.     To the extent any fields are left blank, it is because the coordinator deemed it unnecessary to address those particular elements based on the underlying circumstances of the event at issue.

25.     Columns A through D contain basic information about the referral, such as the facility, File ID number, full name of the provider whose conduct or omission gave rise to the event, and event date.

26.     As to Column E (review type), there are different types of reviews that may be assigned by the coordinator depending on the underlying circumstances of the event.

27.     One such review type is "Peer Review (1:1)". This indicates that the referral was sent by the coordinator for review by a department chief in the same specialty as the physician being reviewed (or other individual as appropriate).

5

28.     If the chosen review type is "Peer Review (1:1)", the department chief or other individual assigned to do the review (hereafter, "reviewer") provides the information necessary to complete Columns J through R of the Quality File.

29.     To my knowledge, neither the Quality Department nor the reviewer creates any additional file for the results of the Peer Review (1:1). Rather, the reviewer sends that data back to the coordinator, and the coordinator enters that information in rL Datix in the fields that correspond to Columns J through R of the Quality File.

30.     Column R contains recommendations based on the results of the review conducted as identified in Column E.

31.     Recommendations may include terms such as "Track and Trend," "Physician Counseling," "Focused Review," "Physician Counseling," and "Refer to Committee."

32.     "Track and Trend" means that although the particular result in a case may not show a deviation from the standard of case, the Quality Department will nonetheless track whether any similar results are reported for that doctor to determine whether there is any sign of a negative trend that requires further investigation.

6

33.    "Focused Review" means that the department head or other reviewer has found something that may indicate a deviation from the standard of care and wants the Quality Department to flag any similar complication that is reported so that it can be determined whether corrective action is necessary with that provider.

34.    "Physician counseling" typically means that the Department Head has spoken with the physician in question to discuss how a particular situation needs to be handled in the future. "Physician counseling" is not a form of formal discipline. If the physician is a BayCare employee, the counseling would not show up in the disciplinary records maintained by Team Resources.

35.    The term "Refer to Committee" in the context of a recommendation as set forth in Column "R" typically means referral of a particular case to a departmental committee (such as a committee under the hospital's Department of Surgery). A case may be referred to a committee because its facts present a valuable teaching opportunity that needs to be shared with other physicians or because it presents an opportunity for the committee to evaluate surgical protocols. It does not necessarily signal that the physician has deviated from the standard of care.

36.    I have been asked to address whether any of the physicians for whom Plaintiff has requested information in her Requests for Production had

7

any "Peer Review," which the Court defined to include "documents, discussions, or meeting(s) to determine whether any action should be taken regarding one of the identified physicians, including: (a) requiring additional education or training, (b) disciplinary action, (c) remediation, (d) privileging restriction, (e) proctoring, (f) collegial intervention, (g) a focused review, and/or (h) reporting to the National Practitioner's Data Bank, a state licensing board, the U.S. Drug Enforcement Administration, and/or the Florida Agency for Health Care Administration." (Dkt. No. 96, at 2).

37.      With respect to the 16 physicians identified by the Court, I can provide the following information based upon my personal knowledge:

a.  **Court's Order, Item 2a**: Some of the 16 physicians were required to receive additional education or were counseled about specific cases. The documents that reflect BayCare's record of these decisions are the quality files that have been produced to the Court for <u>in camera</u> review.

b.  **Court's Order, Item 2b:** Three of the 16 had documentation of coaching or discipline for behavioral issues in their department files. Because this documentation did not involve review of quality-of-care issues, it was not created by the Quality Department, was not

8

maintained as PSWP within the PSES, and was not the subject of

BayCare's PSQIA objections.

    c.  **Court's Order, Item 2c:** BayCare has no record of ever requiring

remediation from any of the 16 providers.

    d.  **Court's Order, Item 2g:** At the recommendation of a department

head, BayCare has placed two of the 16 physicians on focused

review to address specific surgical issues. The records of those

decisions are contained in the quality files that have been produced

to the Court for in camera review.

    38.    In the course of carrying out my due diligence before signing this

affidavit, I found that BayCare still possesses a few older quality files for the 16

physicians at issue that are still in paper form. I believe that these files predate

the implementation of the rL Datix software and are likely from the period

between 2009 and 2016. If the Court would like BayCare to provide these paper

files for <u>in camera</u> review, I will send these files to counsel for submission to the

Court.

    39.    The Chair of the St. Joseph's Medical Staff Peer Review Committee

has the authority to open a review of a physician's clinical competence after

receiving a referral from one of the following sources:

    a.  a department chair;

    b.  the chief medical officer; or

    c.  the hospital president.

40.    A referral from one of the above sources will typically be based upon that individual's judgment that there are significant concerns regarding a physician's clinical competence or ability to practice.  In some cases, referrals may also be made due to significant concerns about a physician's behavioral issues.

41.    The Chair of the Medical Staff Peer Review Committee reviews the referral to determine whether to convene the Peer Review Committee.

42.    Once the Chair convenes the Peer Review Committee to review a referral of a physician, the Peer Review Committee will undertake whatever investigative steps it deems necessary. The Peer Review Committee will then make a recommendation about the subject physician to the Medical Executive Committee of the St. Joseph's Hospital Medical Staff.

43.    The Peer Review Committee maintains agendas and minutes of its meetings. These agendas and minutes are not considered to be PSWP that falls within the PSES.

44.    When the Peer Review Committee begins its review of a physician, a file is created regarding this review. St. Joseph's Hospital refers to this file as a "peer review file."

10

45.     The Peer Review Committee does not open or maintain a "peer review" file on a physician unless that physician has been the subject of a review by the Peer Review Committee.

46.     In other words, if a physician has never been the subject of a review by the Peer Review Committee, no peer review file exists for the physician.

47.     In the absence of significant concerns regarding a physician's clinical competence or ability to practice, the Peer Review Committee is **not** convened and a "peer review" file is **not** opened simply because:

    a.  A Quality Coordinator sends a referral to a department chief or other individual (hereafter, "reviewer") assigned to review a potential quality issue involving one or more physicians.

    b.  As a result of a reviewer's review of a referral received from a Quality Coordinator, it is recommended that:

        i.   The Quality Department track whether any similar results are reported for the physician(s) to determine whether there is any sign of a negative trend that requires further investigation ("Track and Trend").

        ii.  The Quality Department flag any similar complication that is reported so that it can be determined whether corrective action is necessary with the physician(s) ("Focused Review").

11

    iii.  The reviewer speak with the physician(s) in question to discuss how a particular situation needs to be handled in the future ("Physician Counseling")

    iv.  The case be referred to a departmental committee (such as a committee under the hospital's Department of Surgery) because its facts present a valuable teaching opportunity that needs to be shared with other physicians or because it presents an opportunity for the committee to evaluate surgical protocols ("Refer to Committee").

48.    During the period of Dr. Loux's employment, peer review files were maintained as paper files in the St. Joseph's Medical Staff Office.

49.    For better security and searchability, the Medical Staff Office has recently begun to scan peer review files into an electronic database in a shared drive that is under the control of the Medical Staff Office.

50.    With the exception of agendas and minutes, all of the peer review files that have been created by the Peer Review Committee are treated as confidential and privileged and are not disclosed to any outside entities.

51.    AHCA does not require the Medical Staff to disclose any files created by the Peer Review Committee to AHCA either as a matter of routine practice or during any inspection or audit conducted by AHCA.

12

52.     The Medical Staff is not required to disclose the files or records of

the Peer Review Committee to any other regulatory agencies.

53.     None of the Peer Review Committee files or documents maintained

by the Medical Staff Office within BayCare's PSES were prepared to satisfy any

federal, state, or local public health or health oversight record maintenance

requirements.

FURTHER AFFIANT SAYETH NAUGHT.

*Amy Villareal*

AFFIANT – Amy Villareal

SWORN TO and subscribed to before me this _20th_ day of April, 2023, by
_Amy Villareal_____, who is personally known to me or has
produced _____ as identification and who did take
an oath.

(SEAL)

KRISTI L. DEAN
Notary Public - State of Florida
Commission # HH 184196
My Comm. Expires Sep 8, 2025
Bonded through National Notary Assn.

NOTARY PUBLIC
Typed name: _Kristi L. Dean_
My commission expires: _9/8/2025_
Commission No.:_____

13

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

      Plaintiff,                         Case No. 8:21-cv-01891-WFJ-TGW

v.

BAYCARE MEDICAL GROUP, INC.;
ST. JOSEPH'S HOSPITAL, INC.; and
ANAND NAYEE, M.D.,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' CORRECTED MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MAY26,2023 (DKT. NO. 103) AND MOTION TO STAY COMPLIANCE AS TO PRODUCTION OF QUALITY FILES

      Plaintiff, Tara J. Loux ("Dr. Loux"), responds in opposition to Defendants'

Corrected Motion for Reconsideration of the Court's Order, dated May 26, 2023

(Dkt. No. 103) and Motion to Stay Compliance as to Production of Quality Files

(Dkt. No. 106) (the "Motion") and states as follows:

### INTRODUCTION

      The Court's Order correctly found that the Quality Files are not protected by

the Patient Safety and Quality Improvement Act ("PSQIA") and, therefore, should

be produced. In the Introduction to the Motion, Defendants argue that the Court's

Order is so broad that it will limit the effectiveness of the PSQIA.  Defendants

ignore the very limited scope of the Court's Order, which limited the production to

ten physicians (of whom there may not even be responsive documents).  The Court

did not make a sweeping change to the PSQIA standard, as Defendants suggest, but instead followed binding caselaw and undertook an analysis of the statute, relevant caselaw, and the subject documents at issue, as well as the evidence in the record.  Despite Defendants' exaggerated claims, the result of the Order is not manifest injustice, but instead allows Plaintiff access to relevant documents necessary to prove her claim of discrimination – the peer review files of other similarly situated physicians, not members of her protected class, who were treated differently.  Because the result of the Court's Order is not manifest injustice and the Court's Order is not clearly erroneous, the Motion should be denied.

## ARGUMENT

A.   **Reconsideration of the Court's Order Is Not Warranted Because the Order Will Not Result in Manifest Injustice and It Was Not Clearly Erroneous.**

Reconsideration is only appropriate where 1)  controlling law has changed; 2) new evidence has become available; or 3) reconsideration is necessary to correct a clear error or prevent manifest injustice. *Yandell v. Christensen*, 2017 WL 7371199, at *1 (M.D. Fla. Dec. 13, 2017) (citing *Delaware Valley Floral Grp., Inc., v. Shaw Rose Nets*, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010)). A motion for reconsideration cannot be used to relitigate old matters.  *Id.* (citing *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010)). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Id.* (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)); *PNC Bank, N.A. v. Bauman*, 2019 WL 11477405 at * 1 (M.D. Fla. 2019); *Williams v. Polk*

*County Bd. of County Commissioners*, 2022 WL 17820767 at *1 (M.D. Fla. 2022); *Irizarry v. Orlando Utilities Commission*, 2020 WL 3266104 at *1 (M.D. Fla. 2020).

Here, Defendants do not assert that controlling law has been changed or that there is new evidence. Rather, they argue that the Court's Order was clearly erroneous and that the Court's Order will result in manifest injustice. Defendants are incorrect. Manifest injustice requires a showing of "1) a clear and certain prejudice to the moving party that 2) is fundamentally unfair in light of the governing law."[1] *Diamondhead Beach Resort, LLC v. Safety Specialty Ins. Co.*, 2022 WL 7025282 (M.D. Fla. 2022) (quoting *Leidos Inc. v. Hellenic Rep.*, 881 F. 3d 213, 217 (D.C. Cir. 2018)). Not only does Defendants' Motion attempt to relitigate the same issues that have already been litigated and have already decided by this Court, but also, the Motion fails to establish that the Court's Order would result in manifest injustice or that there is clear error.

Defendants assert that the Court's Order would result in manifest injustice because they claim, in conclusory fashion, that the Order will have "immediate and serious consequences on the willingness of Defendants' providers to engage in patient safety activities." (Motion, p. 6). Defendants further state that they are "deeply concerned" that providers will "spread the word" that their activities will

---

[1] Defendants cite *Pottayil v. ThyssenKrupp Elevator Corp*, 574 F. Supp. 3d 1282 (N.D. Ga. 2021), citing to it as an Eleventh Circuit decision. (See Motion, p. 5). However, it is a case from the Northern District of Georgia, citing a case from the Eastern District of Kentucky. Plaintiff submits that the appropriate "manifest injustice" test is the one cited by the Middle District of Florida in *Diamondhead*.

not receive protection under the PSQIA. (Id.).  Defendants' speculative conclusions as to the result of the Court's narrowly-tailored Order do not establish manifest injustice or clear error.

Assuming the Court relied on the manifest injustice test cited by Defendants in *Pottayil*, Defendants' Motion does not provide any fact specific analysis. Instead, it is rank speculation as to what *might* happen with no factual support. They further have not shown how the underlying Order caused or will cause them some type of injustice.  Defendants also cannot show manifest injustice under the test in *Diamondhead*, as they have not established, other than in speculative, conclusory statements, that they will suffer clear and certain prejudice or that the Court's ruling is unfair in light of governing law.

Indeed, Defendants' argument ignores numerous courts that have allowed the production of information without crumbling the patient safety reporting system, as Defendants' Motion suggests the Court's Order will do.  *See e.g. Dence v. Wellpath, LLC*, 2022 WL 17261990 (D. Or. 2022); *Dunn v. Dunn*, 163 F. Supp. 3d 1196, n. 13 (M.D. Ala. 2016); *Ungurian v. Beyzman*, 232 A.3d 786, 796-798 (Pa. 2020); *U.S. v. Mass. Gen. Hosp., Inc.,* 498 F. Supp. 3d 186, 192-193 (D. Mass. 2020); *Ali v. Long Creek Youth Development Center*, 2019 WL 302488 at **6-7 (D. Maine 2019); *Tep v. Southcoast Hosp. Group, Inc.*, 2014 WL 6873137 at *2 (D. Mass. 2014); *Garcia v. Bd. of County Commissioners of Dona Ana*, 2023 WL 22122 (D. N. Mex. 2023); *Baptist Health Richmond, Inc. v. Clouse,* 497 S.W. 3d 759 (Ky. 2016).  To the contrary, as the Eleventh Circuit pointed out in *Adkins v.*

*Christie*, 488 F.3d 1324 (11th Cir. 2007), disallowing the discovery of "comparator" documentation may deprive the discrimination plaintiff of the "only" evidence that could establish his or her case.

Defendants have not met their burden to show that they are entitled to the extraordinary relief of reconsideration. The Motion should be denied.

**B.    The Court's Order Was Not Clearly Erroneous Because Peer Review Documents are Not Protected  By the PSQIA Privilege in Federal Civil Rights Discrimination Cases.**

Defendants previously asserted that they have no peer review documents other than documents that are contained in files Defendants denominated as Patient Safety Work Product ("PSWP") protected by the PSQIA. While Plaintiff has not reviewed the Quality Files at issue, during the hearing, the Court noted that they were noted as "peer review." The "Quality Files" are listed in the privilege log as "issues brought to the attention of St. Joseph's quality department for review and analysis as to whether quality of care issues exist with respect to care provided by specific providers." (Dkt. No. 71, p. 11). The privilege log states that the documents are created in the r.l. Datix's peer review module used by the Hospital's Quality Department and that they remain in that module. It further provides that the documents are created "when a referred quality of care concern requires further review of the care of a specific provider." These files include information such as the facility name, the provider's name, the case summary, quality concerns, the adverse patient outcome, and recommendations, among other information. The quality files are analyzed by team members within the quality department and

"other reviewers" to determine whether the care provided by the provider raised issues of patient safety or quality of care.

Peer review files are discoverable in employment discrimination cases. As the Eleventh Circuit held in *Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007), the medical staff peer review privilege does not apply in federal civil rights cases because the discrimination takes place in the peer review itself and therefore peer review documents of other physicians is "essential to determining whether there has been discrimination in employment." *Id.* at 1329.

Similarly, the PSQIA does not protect peer review files from discovery in employment cases, and numerous courts have held that, while peer review files may  be protected under PSQIA in medical malpractice cases, they are not protected in  civil rights cases. *Dunn v. Dunn*, 163 F. Supp. 3d 1196, n. 13 (M.D. Ala. 2016) ("This court joins others in concluding that, although the PSQIA somewhat expanded the federal statutory peer-review privilege, it does not undermine the Eleventh Circuit's conclusion that no federal common law peer review privilege applies in civil rights cases."); *U.S. v. Mass. Gen. Hosp., Inc.,* 498 F. Supp. 3d 186, 192-193  (D. Mass. 2020) (Under PSQIA "Congress did not extend the privilege to include all medical peer review evidence from medical care providers.... [T]he purpose of PSQIA will not be advanced by recognizing the medical peer review privilege . . .  where the quality of patient care is not directly at issue."); *Ali v. Long Creek Youth Development Center*, 2019 WL 302488 at **6-7  (D. Maine 2019) (recognizing a narrow privilege created by PSQIA in cases

involving important federal interests); *Tep v. Southcoast Hosp. Group, Inc.*, 2014 WL 6873137 at \*2 (D. Mass. 2014) (recognizing broader peer review privilege in medical malpractice cases but stating that, in employment discrimination cases, "courts have determined the privilege would undermine other important interest such as rooting out invidious discrimination."); *Garcia v. Bd. of County Commissioners of Dona Ana*, 2023 WL 22122 (D. N. Mex. 2023) ("The court is not persuaded that [the defendant's] stated purpose in crafting the mortality review report was to the exclusion of other apparently applicable and non-discriminatory purposes," and, therefore, the defendant failed to carry its PSQIA burden); *Awwad v. Largo Med. Ctr, Inc.*, 2012 WL 1231982 (M.D. Fla. 2012).

While the PSQIA announces broad evidentiary protections for patient safety work product, the statue was not intended to provide a blanket protection for all information and communications generated for quality control purposes. *Johnson v. Cook Cnty.*, 2015 WL 5144365, at \*6 (N.D. Ill. Aug. 31, 2015) (citing S. Rep. No. 108–196, at 2 (2003) (explaining the protections apply only to "certain categories of documents and communications termed 'patient safety work product' that are developed in connection with newly created patient safety organizations")). "The text of the PSQIA manifests the drafters' intent by emphasizing that only information specifically made or gathered for or by a patient safety organization ("PSO") or a patient safety evaluation system is patient safety work product." *Id.* (citing 42 U.S.C. § 299b–21(7)(A)). "The statute elaborates on that point by stressing that patient safety work product 'does not include information that is

collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product.'" *Id.* (quoting 42 U.S.C. § 299–b21(7)(B)).

As such, for documents to be protected by the PSQIA, the documents must have been developed for the purpose of reporting to a PSO. *Dence v. Wellpath, LLC*, 2022 WL 17261990 (D. Or. 2022) (allowing production of a morbidity and mortality review report because it was used for a dual purpose of reporting to a PSO and meeting the defendant's contractual requirements); *Penman v. Correct Care Solutions*, *LLC*, 2020 WL 4253214  (W.D. Ky. 2020); *Ungurian v. Beyzman*, 232 A.3d 786, 796-798  (Pa. 2020) (reports were not protected by PSQIA because they were not created for the purpose of reporting to PSO); *Baptist Health Richmond, Inc. v. Clouse,* 497 S.W. 3d 759 (Ky. 2016) (holding that a provider who participates in the PSQIA may collect information within its patient safety evaluation system that complies with the PSQIA and that also complies with state statutory and regulatory requirements, but, in doing so, the provider is not released from complying with state requirements and such information collected in the providers' patient safety evaluation system must comply with those state requirements and is not privileged); *Herriges v. County of Macomb*, 2020 WL 3498095 (E.D. Mich. 2020).

Here, the affidavit submitted by Defendants does not state that the peer review documents were developed for the purpose of reporting to a PSO. Instead,

what Defendants' affidavit states is that the documents were "not created to meet any external obligations." That is not the same as affirmatively providing that the Quality Reports were created for reporting to the PSO. See *Ungurian*, 232 A.3d at 795-796; *Garcia v. Bd. of County Commissioners of Dona Ana*, 2023 WL 22122 (D. N. Mex. 2023) ("The court is not persuaded that [the defendant's] stated purpose in crafting the mortality review report was to the exclusion of other apparently applicable and non-discriminatory purposes," and, therefore, the defendant failed to carry its PSQIA burden).

To the contrary, peer review documents are developed to comply with Florida law and as a requirement for St. Joseph's to be accredited by the Joint Commission. Florida law requires peer review to be performed by hospitals in Florida as a condition of its licensure. Fla. Stat. § 395.0193(2) ("Each licensed facility, as a condition of licensure, shall provide for peer review of physicians who deliver health care services at the facility. Each licensed facility shall develop written, binding procedures by which such peer review shall be conducted."). Further, Defendant, St. Joseph's Hospital, is accredited by the Joint Commission. See https://www.baycare.org/hospitals/st-josephs-hospital/about-us/jcaho-notice. If a hospital is accredited by The Joint Commission, it is deemed eligible to receive Medicare and Medicaid reimbursement. See https://www.r1rcm.com/news/the-joint-commission-vs.-cms-requirements-whats-the-difference. Hospitals are required by the Joint Commission, in order for the hospital to be accredited, to conduct peer review in the credentialing, re-

credentialing, and in investigating and disciplining physicians. (See Joint Commission Standards MS.4.30, MS.4.40, MS.4.45, MS.4.50, MS.4.70, MS.4.80, MS.4.00 - 4.25, MS.4.60 and HR.1.20).

Because both Florida law and the Joint Commission require St. Joseph's to conduct peer review, the peer review documents St. Joseph's labels as PSWP are "collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system…", 42 USC § 299b-21(7)(B)(ii), and therefore is not PSWP and is not protected by the PSQIA. Additionally, because peer review documents were not developed for the purpose of reporting to a PSO, they are not protected by the PSQIA privilege. *Penman*, 2020 WL 4253214 at *4; *Herriges at * 8* (The manager who signed the declaration did "not state that this specific report was assembled and developed for reporting to a PSO and, more importantly, she [did] not state that the Report was assembled and developed for the **sole** purpose of reporting to a PSO." (emphasis added). Further, the Florida Supreme Court refused to recognize documents as protected PSWP when state law required collection and disclosure of documents that would otherwise be PSWP. *Charles v. Southern Baptist Hosp. of Fla., Inc.*, 209 So. 3d 1199 (Fla. 2017). For these reasons, regardless if St. Joseph's identifies documents as PSWP, if those documents are peer review documents, the documents are not protected by the PSQIA privilege. To hold otherwise permits hospitals to shield all peer review files from discovery in discrimination cases by labeling all peer review as PSWP, a result directly contrary to the Eleventh Circuit's holding in *Adkins*.

Because the Court correctly found that, in this employment discrimination case, based on the relevant case law, the statute, and the record evidence, the Quality Files of the 10 physicians are to be produced, the Motion should be denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion.

/s/ Amy L. Drushal
JOHN D. GOLDSMITH
Florida Bar No. 0444278
jgoldsmith@trenam.com
idawkins@trenam.com
svanboskerck@trenam.com
AMY L. DRUSHAL
Florida Bar No. 546895
aldrushal@trenam.com
lbehr@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
  FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL  33602
Tel:  813-223-7474

and

/s/ Terin Barbas Cremer
Terin Barbas Cremer
Florida Bar No. 88592
BARBAS CREMER, PLLC
209 S. Packwood Avenue
Tampa, FL  33606
Tel:  813-421-5442
tcremer@barbascremer.com

Attorneys for Plaintiff

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 23, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Amy L. Drushal
Attorney

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TARA J. LOUX, M.D.,

     Plaintiff,

v.                                                                  Case No. 8:21-cv-1891-WFJ-TGW

BAYCARE MEDICAL GROUP, INC.,
ST. JOSEPH'S HOSPITAL, INC.,
and ANAND NAYEE, M.D.,

     Defendants.

_____/

## **<u>ORDER</u>**

The Court denies the Motion for Reconsideration and Motion to Stay

Production.  Doc. 106.  The Motion for Reconsideration reargues the points made

previously in writing and at the prior hearing.  The Motion provides no new

grounds, or description of items the Court overlooked or misapprehended

previously.  The Court reiterates its Order of May 26, 2023, Doc. 103.

The Court does not restate the statutory description of the Patient Safety and

Quality Improvement Act and the asserted privilege.  *See* 42 U.S.C. §§ 299b-21 -

26 (2005); 42 C.F.R. pt. 3.  Sufficient to say, the manner in which Defendants have

stored their information, and the blanket of privilege in which they seek to

envelope it, would prohibit any civil rights litigant like Plaintiff from ever

discovering appropriate comparators for her case.  The description of the items discussed here were reviewed at the prior hearing.[1]

It appears to the Court that the "Category 5" spreadsheets (and the data they represent) were created for multiple uses and are not solely the protected patent safety work product.  This information is not prepared and kept solely for provision to a Patient Safety Organization ("PSO"), despite the artful declarations provided.

The first place to examine to determine if this information is put to dual or multiple uses is BayCare's own description of its "Patient Safety Organization" protocol.  *See* Doc. 62-1 (Small Decl.) at 11.  This describes what BayCare declares the PSO system to be.  Under this system "Patient Safety Work Product" ("PSWP") may be provided by the BayCare system for analysis to over a dozen local entities, including First Focus committees, the Board of Directors, Peer Review Committees, Clinical Excellence teams, Root Cause Analysis (RCA)

---

[1] The specific item under discussion is a thumb drive with a pdf and an excel spreadsheet, for each of the 16 potential comparators.  The Court has since reduced this number to ten.  This thumb drive is filed under seal with the Clerk.  Defendants only need to produce the data for the ten potential comparators that Plaintiff selected.

   During the hearings this data set was referred to as "item 5-quality files."  Each spreadsheet is titled at the top "Peer Review Summary—All Review Types."  The spreadsheets contain incident reports describing various incidents involving potential comparators.  For example, the very first entry on the first possible comparator describes a laproscopic appendectomy where a small artery was cut.  The second entry discusses an unplanned return to the operating room due to a kink in a catheter.  Under "Recommendation" the various cells are blank or may contain various entries such as "Physician Counseling" or "Focused Review," "Track and Trend," etc.  "Quality Concerns" may be listed like "Failure to Follow Policy & Procedure" or "Surgical Complications."

teams, Medication Usage and Safety teams, and the like.  *Id*. at 12.  Beyond these 12 plus recipients, permissible disclosures of BayCare's "Patient Safety Work Product" include providing such work product to: accrediting agencies; grantees, contractors, and researchers sanctioned by "the Secretary;" the Food and Drug Administration; those recipients "the Secretary" or Florida or Federal law deem necessary for business operations and are consistent with relevant goals; and to law enforcement if the discloser reasonably deems it "necessary for criminal law enforcement purposes."  *Id*.  BayCare thus designates many sources beyond a PSO as possible recipients for its PSWP.

Each item that was produced for *in camera*, *ex parte* review is labeled at the top "peer review."  One column called "Review Type" is often populated "peer review."  Action columns look like peer review.  Nothing visible refers to a PSO or indicates the items are sent to a PSO.  Action terms, like "Refer to Committee," "Track and Trend," "Focused Review," or "Physician Counseling" suggest the dual purpose of this data.  It is not the "PSO committee" that is referred to here. The PSO does not counsel the physician subject to the counseling.  The local Quality Department does the "Track and Trend," not the PSO.  *See* Doc. 106-1 (Villareal Aff.) ¶¶ 32–35.

Important to Plaintiff, some of her potential comparators "were required to receive additional education or were counseled about specific cases [and] the

documents that reflect BayCare's record of these decisions are the quality files . . ."
*Id*. ¶ 37(a).  And possibly two comparators were placed on "Focused Review" (a review not by the PSO) to address surgical issues.  *Id*. ¶ 37(d).  Plaintiff is entitled to review the matters to prove (if she can) that she was treated disparately than her professional peers, for discriminatory purpose.  BayCare's current posture makes her unable to have proper litigation discovery.

The Quality Department of BayCare does submit reports or information related to incidents of individual physicians to the peer review committee of St. Joseph's Hospital.  Doc. 74-1 (Small dep.) at 13.  This comes out of the rlDatix system discussed here.  *Id*.

"Quality of Care" events include other incidents beyond the serious "Code 15" mishaps that must be reported to the Florida Agency for Health Care Administration.  *Id*. at 21–22.  These non-code 15 events are found in the subject documents that Defendants object to producing.  But they are relevant to risk management and various committees across BayCare and within each of the hospitals.  *Id*. at 11–13.  They certainly would be relevant to Plaintiff if her comparators were treated differently than she.

A specific event could be "tasked through to the quality team for peer review.  And dependent on content, it could also be sent through to risk

[management]." *Id*. at 20.[2]  Events are entered into the rlDatix systems "related to quality of care" and the quality of care events listed can then be submitted to be reviewed for peer review. *Id*. at 44.  The event report may be submitted both to the PSO and to the rlDatix peer review module. *Id*. at 47.  And the medical staff department may print out the rlDatix report, and keep it, after peer review. *Id*. at 48.  The information continued in the patient safety evaluation system is provided to the peer review committee. *Id*. at 57.  The purpose of providing this information is to inform peer review at the hospital. *Id*.  The same information from the patient safety evaluation system is provided to the root cause analysis teams.  This is not the PSO.  These teams are "facilitators who move around the system dependent on future events," where events occurred—interdisciplinary teams brought from several sources such as the President of the facility, the local experts in the hospital system, etc.  This has nothing to do with the PSO, but these utilize the data in the patient safety evaluative system. *Id*. at 57–58.  Clearly this information serves multiple functions for multiple parties within this large system.

Root cause teams use this system and data. *Id*. at 55–56.  Root cause teams are risk management. *Id*. at 20–21.  HHS guidance states that information prepared for risk management is not PSWP. *See supra* note 2.

---

[2] HHS notes that information prepared for risk management is not PSWP.  Patient Safety and Quality Improvement Act of 2005—HHS Guidance, 81 Fed. Reg. 32655-01, 32656, 2016 WL 2958759 (May 24, 2016) ("HHS Guidance").

As well as risk management and "several committees of provider and team members," BayCare and St. Joseph's Hospital utilize this data for BayCare and St. Joseph's own peer review.  Doc. 62-1 (Small Decl.) at 4, ¶¶ 19–20.  So the data is kept for, and used by, entities other than the PSO.  This data can be reviewed by the facility, internal committees such as St. Joseph's medical staff peer review committees, BayCare's peer review quality committee, or St. Joseph's "first focus" committee.  *Id*. at 7, ¶ 35.

And this data is kept for use in answering outside questions as well. Defendant's witness Villareal stated BayCare may use the claimed-privileged data to conduct analysis to answer questions "[i]f AHCA or any other agency requests information or has any questions regarding a specific event."  Doc. 106-1 ¶ 10.

The intent of "the Patient Safety Act is to protect the <u>additional information</u> created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities."  HHS Guidance at 32655, cited *supra* note 2 (emphasis added).  HHS advises that the Act would not prevent medical malpractice patients from obtaining the records about their case that they could have obtained before the Act.  *Id*. at 32656.  "Nor was the Patient Safety Act intended to insulate providers from demonstrating accountability through fulfilling their external obligations."  *Id*.  HHS then cites with approval the legislative history that "[t]his legislation does nothing to reduce or affect other

6

Federal, State or other local legal requirements pertaining to health related

information." *Id*. at 32660 n.6.

The Motion to Reconsider, Doc. 106, is denied.

**DONE AND ORDERED** at Tampa, Florida, on June 27, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**<u>COPIES FURNISHED TO</u>**:
Counsel of record

7

**Laura Kick**

| | |
|---|---|
| **From:** | cmecf_flmd_notification@flmd.uscourts.gov |
| **Sent:** | Wednesday, June 28, 2023 11:47 AM |
| **To:** | cmecf_flmd_notices@flmd.uscourts.gov |
| **Subject:** | Activity in Case 8:21-cv-01891-WFJ-TGW Loux v. Baycare Medical Group, Inc. et al Order |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Middle District of Florida**

**Notice of Electronic Filing**

The following transaction was entered on 6/28/2023 at 11:46 AM EDT and filed on 6/28/2023

| | |
|---|---|
| **Case Name:** | Loux v. Baycare Medical Group, Inc. et al |
| **Case Number:** | 8:21-cv-01891-WFJ-TGW |
| **Filer:** | |
| **Document Number:** | 115(No document attached) |

**Docket Text:**
**ENDORSED ORDER: Under the appropriate HIPAA protocols, Defendants should provide to Plaintiff the "category 6 referral logs" provided to the Court, which number six pages, the top page of which has the date 2/22/19 in the first line. Also provide the four-page Report Number 402173/Incident Number 16362. The Court understands this four-page report to be the Code 15 report identified in the Small Declaration of April 28, 2023. Signed by Judge William F. Jung on 6/28/2023. (Jung, William)**

**8:21-cv-01891-WFJ-TGW Notice has been electronically mailed to:**

John D. Goldsmith    jgoldsmith@trenam.com, idawkins@trenam.com, svanboskerck@trenam.com

Kevin D. Johnson    kjohnson@johnsonjackson.com, lesposito@johnsonjackson.com, lkick@johnsonjackson.com

Amy Lea Drushal    adrushal@trenam.com, jcharles@trenam.com, lbehr@trenam.com

Terin Barbas Cremer    tcremer@barbascremer.com

Ashley Tinsley Gallagher    agallagher@johnsonjackson.com

**8:21-cv-01891-WFJ-TGW Notice has been delivered by other means to:**